Jack K. LEE, Gordon W. Riley, and the
Reverend Leonard R. Scharmach,
Plaintiffs,

v.

The BOARD OF REGENTS OF STATE
COLLEGES et al., William Lee Carter,
James Demeter, Pennelope Muehl, Mi-
chael Nickodem, Dennis Thornton,
Brian W. Townsend, Mary Mills, Janette
Bohl, Joseph Hlavacek, Ronald Merrell,
Donald L. Power, and Edwin E. Thele,
William Armstrong, John Beilfuss, El-
len Dreger, James Frey, Lance Hill,
Pamela Johnson, Hartley M. Masler,
John McIntyre, Susan Santeler, David
Soleau, Mary E. Struckmeyer, Thomas
Watts, and Robert Zuck, Defendants.

No. 68–C–61.

United States District Court
W. D. Wisconsin.

Dec. 15, 1969.

Louis D. Gage, Jr., Janesville, Wis., Charles Hoornstra, Madison, Wis., for plaintiffs.

Robert W. Warren, Atty. Gen., Charles A. Bleck, Asst. Atty. Gen., Madison, Wis., for defendant Board of Regents.

Thomas Godfrey, Elkhorn, Wis., for individual defendants.

JAMES E. DOYLE, District Judge.

This is an action brought under the Civil Rights Act of 1871, 42 U.S.C. § 1983, in which plaintiffs seek a declaration that they have been deprived of rights secured to them by the First and Fourteenth Amendments of the United States Constitution. Jurisdiction of this court is asserted under 28 U.S.C. § 1343 and 28 U.S.C. § 2201.

Plaintiffs allege that under chapter 37 of the Wisconsin Statutes, the defendant Board of Regents of State Colleges [now known as the Board of Regents of State Universities] is empowered to govern and manage "the branch of higher education in the State of Wisconsin known as the State University System which includes Wisconsin State University-Whitewater." Plaintiffs further allege that defendant William Lee Carter is the president of Wisconsin State University-Whitewater and acts under a delegation of authority from the Board of Regents; that other defendants are members of the Student Publications Board at Whitewater and, by authority delegated to them by the Board of Regents and the president, set policy and make rules and regulations for a campus newspaper known as the Royal Purple owned by the University; and that the remaining defendants are members of the staff of the newspaper and, by authority delegated to them by the Student Publications Board, set policy and make rules and regulations for the newspaper.

Plaintiffs allege that on October 6, 1967, and again on October 9, 1967, plaintiff Riley submitted an "editorial advertisement" concerning a university employees union to the Royal Purple and was informed by a staff member that the paper would not publish it; that the staff member said that it was the paper's policy not to publish such advertisements; and that the staff member sent plaintiffs a copy of this policy entitled "Royal Purple Policies—Types of Advertising Accepted" (Exhibit "C" attached to complaint).

It is further alleged that on October 6, 1967, plaintiff Scharmach submitted an advertisement entitled "An Appeal to Conscience", which dealt with alleged discrimination, and that this advertisement was refused in a like manner.

On November 6, 1967, plaintiff Lee allegedly submitted an advertisement to the Royal Purple concerning race relations and the Viet Nam war; the paper is alleged to have refused to accept this advertisement for publication.

Plaintiffs state that on several occasions they have requested a change in this policy by appeals to both the Student Publications Board and President Carter. Both refused to change the policy. Plaintiffs claim that these actions amount to a deprivation, under color of state law, of their rights of freedom of speech and of press guaranteed to them by the First and Fourteenth Amendments.

On August 30, 1968, defendants' motions to dismiss were denied. Plaintiffs then moved for summary judgment. Affidavits, briefs and documentary exhibits were submitted to the court.

Defendants then moved to strike the affidavit of one Ruth Miner. This affidavit sought to establish the accuracy and veracity of numerous documents submitted by affiant Miner. Defendants did not, however, object to the admissibility of all of these documents. Since the documents objected to are not necessary to a determination whether summary judgment should be granted, I find it unnecessary to rule on defendants' motion to strike the affidavit of Ruth Miner.

On the basis of the pleadings, the affidavits and the entire record herein, I find that there is no dispute as to the following material facts: that the Royal Purple is a campus newspaper at Whitewater State University which is staffed by volunteer student help, both paid and unpaid; that the staff of the Royal Purple is supervised by the faculty and administration of Whitewater State University; that a faculty-student committee at Whitewater entitled the Student Publications Board has the function of reviewing general policies governing student publications and making recommendations when needed; that at all times material hereto the Student Publications Board and the staff of the Royal Purple had adopted a policy of not accepting "editorial advertisements," i. e., advertisements which express a view on "political" issues, in the broad sense of the word; that during October and November of 1967 plaintiffs submitted editorial advertisement copy of the kind alleged in their complaint to the Royal Purple; that this editorial advertisement copy was not accepted for publication by the staff of the Royal Purple because of the Royal Purple's policy against printing such material as advertisements; that some of the plaintiffs have asked the Royal Purple staff, the Student Publications Board and defendant William L. Carter, President of Whitewater State University, to modify the policy of not accepting editorial advertisements; and that each of these entities has refused to modify such policy and that defendant Carter has expressly approved the continued enforcement of this policy.

There does appear to be some dispute as to the role of the defendant Board of Regents in this controversy. Plaintiffs allege that defendant Carter and the Student Publications Board have been delegated authority by the Board of Regents to set policy and make rules and regulations for the Royal Purple and that the staff of the Royal Purple in turn has been delegated authority by the Student Publications Board to set policy and make rules and regulations for the newspaper. The affidavit of Eugene R. McPhee, secretary of the Board of Regents, contradicts these and other allegations by plaintiffs. Affiant McPhee avers "that the defendant Board of Regents has not delegated any authority to the faculty at Whitewater State University by which the faculty may create or delegate authority to the Student Publications Board"; that the Board of Regents has not delegated authority in regard to the making of rules, policies or regulations in the matter of the student newspaper to either the publications board or the staff members of the newspaper; that the Board of Regents "has never specifically authorized the president of the Wisconsin State University—Whitewater to make rules, regulations or policy for the student newspaper"; that the defendant Board of Regents did not have any knowledge of the advertising policies of the Royal Purple, was unaware of the Royal Purple's refusal to print plaintiffs' advertisements, and was "completely without knowledge as to the alleged facts in support of the plaintiffs' claim of denial of constitutional rights"; that plaintiffs never brought the advertising policies of the Royal Purple to the attention of the Board of Regents or requested the Board to review or change such policies; and that neither defendant Carter, the Student Publications Board or the Royal Purple staff ever submitted such adver-

tising policies to the Board of Regents for approval or action of any kind.

Defendant Board of Regents argues that because it did not have knowledge of the facts complained of, because it delegated no authority to the other defendants and because the record shows no misuse or abuse of state power on its part, declaratory judgment as to it is improper.

 Under § 37.11, Wis.Stats., the Board of Regents is empowered to govern the university, to appoint and remove its president and to prescribe his duties. The president is an employee of the Board of Regents. Martin v. Smith, 239 Wis. 314, 1 N.W.2d 163, 140 A.L.R. 1063 (1941). It is undisputed that the president of Whitewater State University, defendant Carter, has supported the advertising policies here in question (Exhibit "G" attached to the complaint). These facts, plus the fact that the Board of Regents may have the power to enforce the policies in question, make the Board a proper party to an action for a declaration of rights. Williams v. Virginia State Bd. of Elections, 288 F.Supp. 622 (E.D.Va.1968), aff'd 393 U.S. 320, 89 S.Ct. 555, 21 L.Ed.2d 516; United States v. Mississippi, 380 U.S. 128, 141, 85 S.Ct. 808, 13 L.Ed.2d 717 (1965); Browder v. Gayle, 142 F.Supp. 707 (M.D. Ala.1956), aff'd 352 U.S. 903, 77 S.Ct. 145, 1 L.Ed.2d 114. The Board is charged by the state legislature with the administration of the school. It is both an interested and a proper party. In a declaratory judgment action, wherever possible, all interested parties are to be joined. Franklin Life Ins. Co. v. Johnson, 157 F.2d 653 (10th Cir. 1946). Even if the Board had no jurisdiction over the acts which resulted in a deprivation of plaintiffs' constitutional rights, its retention as a party defendant would be harmless to it, even if erroneous. See *Browder, supra,* 142 F.Supp. at 714, n. 13.

If this were an action for injunctive relief, it might be important to consider exactly what authority the Board of Regents can exercise over the advertising policy of the Whitewater State University school newspaper. However, plaintiffs seek only a declaratory judgment that their constitutional right to freedom of expression has been violated.

Defendants argue that material issues of fact remain in dispute and that summary judgment would not be proper. The facts in dispute are, according to defendants, (1) whether the Royal Purple is a "newspaper" and (2) if the Royal Purple is a newspaper, whether plaintiffs had other means of expressing themselves in this newspaper.

Defendants argue that the Royal Purple is only a student publication, that it is a "journalistic experiment" and "educational exercise" and not a "newspaper" as the term is generally known. Consequently, defendants contend, even if a newspaper of general circulation were obliged to accept editorial advertisements (cf., New York Times Co. v. Sullivan, 376 U.S. 254, 265–266, 84 S.Ct. 710, 11 L.Ed.2d 686, 95 A.L.R.2d 1412 (1964)), the Royal Purple is not really a newspaper at all and is not obliged to accept editorial advertisements.

 Defendants' attempt to characterize the Royal Purple as something other than a newspaper and thereby to attempt to raise an issue of fact must fail. The record herein clearly shows that the Royal Purple is a "campus newspaper." The court can take judicial notice that such newspapers meet the general definition of "newspaper" as "a paper printed and distributed, at stated intervals * * * to convey news, advocate opinions, etc., now usually containing also advertisements and other matters of public interest. * * *" Webster's Dictionary, p. 1648 (2nd Ed.). Defendants cannot admit that the Royal Purple is a campus newspaper, as they have done, and simultaneously try to label it as a private venture or mere "journalistic experiment." See Zucker v. Panitz, 299 F.Supp. 102, 103 (S.D.N.Y.1969). As a campus newspaper, the Royal Purple constitutes an important forum for the

dissemination of news and expression of opinion. As such a forum, it should be open to anyone who is willing to pay to have his views published therein—not just to commercial advertisers.

■ A dispute of fact is also said to exist with respect to defendants' contention that plaintiffs could have had their views published in other columns of the paper, for example, the letters to the editor column. For purposes of the motion for summary judgment, plaintiffs have conceded that defendants were willing to publish the substance of plaintiffs' editorial advertisements in the letters to the editor column. Thus no dispute of fact exists. Moreover, defendants' willingness to publish plaintiffs' views in the letters to the editor column does not rob plaintiffs' allegations of deprivation of freedom of expression of any force. It is readily apparent that a paid advertisement can be cast in such a form as to command much greater attention than a letter to the editor. Large type, photographs, repeated publication and full pages of space are some of the modes of expression available in an editorial advertisement that might not be available in a letter to the editor.

Having determined that there is no genuine issue as to any material fact, I now consider whether plaintiffs are entitled to a declaratory judgment as a matter of law. Rule 56(c), F.R.Civ.P.

The United States Supreme Court in New York Times Co. v. Sullivan, *supra,* characterized editorial advertisements as

"* * * an important outlet for the promulgation of information and ideas by persons who do not themselves have access to publishing facilities—who wish to exercise their freedom of speech even though they are not members of the press." 376 U.S. at 266, 84 S.Ct. at 718.

Several courts have held that refusal to accept and print editorial advertisements constitutes a denial of free speech and freedom of expression in violation of the First Amendment. See Zucker v. Panitz, *supra*; Hillside Community Church, Inc.

v. City of Tacoma, Wash., 455 P.2d 350 (1969) (editorial advertisements on city bus line); Wirta v. Alameda-Contra Costa Transit Dist., 68 Cal.2d 51, 64 Cal.Rptr. 430, 434 P.2d 982 (1967) (editorial advertisements on city bus line); Kissinger v. New York City Transit Authority, 274 F.Supp. 438 (S.D.N.Y. 1967) (posters in New York subway). See generally, Barron, "Access to the Press—A New First Amendment Right," 80 Harv.L.Rev. 1641 (1967).

■ Defendants' acceptance of commercial advertisements and of those public service advertisements that do not "attack an institution, group, person or product" and their rejection of editorial advertisements constitutes an impermissible form of censorship. As stated by the court in *Wirta, supra*:

"Not only does the * * * policy prefer certain classes of protected ideas over others but it goes even further and affords total freedom of the forum to mercantile messages while banning the vast majority of opinions and beliefs extant which enjoy First Amendment protection because of their noncommercialism." 64 Cal. Rptr. at 434, 434 P.2d at 986.

■ Plaintiffs' right to express their views on vital issues of the day should not be restricted unless a "clear and present danger" to society is apparent. Schenck v. United States, 249 U.S. 47, 52, 39 S.Ct. 247, 63 L.Ed. 470 (1919); Terminiello v. City of Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949). Defendants have not claimed that they would prove the existence of a clear and present danger and it is highly doubtful that they could. The only danger present here is the threat posed to plaintiffs' right of free speech. Anyone wishing to sell a product or service may advertise it in the Royal Purple; yet, plaintiffs are unable to "sell" their ideas to the readers of the Royal Purple. There can be no doubt that defendants' restrictive advertising policy—a policy enforced under color of state law—is a denial of free speech and expression in violation of the

First and Fourteenth Amendments. Cf. Gitlow v. New York, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925).

Upon the basis of the entire record herein, plaintiffs' motion for summary judgent is hereby granted. It is adjudged and declared that defendants have unlawfully deprived plaintiffs of their rights of freedom of speech and expression by refusing to print the editorial advertisements submitted by plaintiffs to the Royal Purple newspaper or by sanctioning such refusal.