**Jack K. LEE et al., Plaintiffs-Appellees,**

v.

**The BOARD OF REGENTS OF STATE COLLEGES et al., Defendants-Appellants.**

**Nos. 18404, 18405.**

United States Court of Appeals, Seventh Circuit.

May 4, 1971.

---

3. See footnote 4 to majority opinion.

1258

Thomas G. Godfrey, Elkhorn, Wis., Robert W. Warren, Atty. Gen., Charles A. Bleck, Asst. Atty. Gen., Madison, Wis., for defendants-appellants.

Henry L. Mason, III, Chicago, Ill., for plaintiffs-appellees; Louis D. Gage, Jr., Janesville, Wis., Bernard Weisberg, Chicago, Ill., of counsel.

Before FAIRCHILD and KERNER, Circuit Judges, and CAMPBELL, Senior District Judge.[1]

FAIRCHILD, Circuit Judge.

This is an appeal from a judgment, entered on motion for summary judgment, declaring that defendants have unlawfully deprived plaintiffs of freedom of speech by refusing to print in a university campus newspaper editorial advertisements submitted by plaintiffs. The opinion of the district court appears at 306 F.Supp. 1097 (1969), and we will avoid unnecessary repetition. We affirm.

1. *State action.* It is conceded that the campus newspaper is a state facility. Thus the appeal does not present the question of whether there is a constitutional right of access to press under private ownership.[2]

---

1. The Honorable William J. Campbell, Senior District Judge, Northern District of Illinois, is sitting by designation.

2. See Chicago Joint Bd., Amal. Clth. Wkrs. v. Chicago Tribune Co. (7th Cir., 1970), 435 F.2d 470; Barron, "Access to the

■ 2. *The issue presented.* The substantive question is whether the defendants, having opened the campus newspaper to commercial and certain other types of advertising, could constitutionally reject plaintiffs' advertisements because of their editorial character. The case does not pose the question whether defendants could have excluded all advertising nor whether there are other conceivable limitations on advertising which could be properly imposed.

The student publications board had adopted the following policy:

"TYPES OF ADVERTISING ACCEPTED

"The ROYAL PURPLE will accept advertising which has as its main objective the advertising of

1. A COMMERCIAL PRODUCT.

2. A COMMERCIAL SERVICE.

3. A MEETING. The pitch of an advertisement of this type must clearly be 'come to the meeting'. The topic may be announced, but may not be the main feature of the ad.

4. A POLITICAL CANDIDATE whose name will appear on a local ballot. Political advertising must deal solely with the platform of the advertised person. Such copy cannot attack directly opponents or incumbents. Such advertising must contain the following: This advertisement authorized and paid for by (*name of person or organization.*)

5. A PUBLIC SERVICE. Advertising of a public service nature will be accepted if it is general in nature, in good taste, and does not attack specific groups, institutions, products, or persons.

The ROYAL PURPLE has the right to refuse to publish any advertisement which it may deem objectionable."

Plaintiff Riley submitted an advertisement describing the purposes of a university employees' union and announcing a meeting on safety regulations. It was rejected under the policy because part of it dealt with the business of the meeting.

Plaintiff Scharmach's advertisement was entitled "An Appeal to Conscience." It was signed by nine ministers and proclaimed the immorality of discrimination on account of color or creed.

Plaintiff Lee submitted an advertisement to be signed by himself and stating as follows:

" 'You shall love your neighbor as yourself.'

Matthew 19:19

This verse should mean something to us all who are concerned with race relations and the Vietnam War."

The rejection stated in part, "Your ad could possibly come under the public service ad, but it deals with political issues, and is therefore not a public service."

Decisions cited by the district court[3] support the proposition that a state public body which disseminates paid advertising of a commercial type may not reject other paid advertising on the basis that it is editorial in character. Other decisions condemn other facets of discrimination in affording the use of newspaper and other means of expression on public campuses.[4]

Defendants rely upon Adderley v. Florida (1966), 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 for the proposition that the state "has power to preserve the property under its control for the use to

Press—A New First Amendment Right," 80 Harv.L.Rev. 1641 (1967) ; Barron, "An Emerging First Amendment Right of Access to the Media?" 37 Geo.Wash.L. Rev. 487 (1969).

3. 306 F.Supp. 1101.

4. Healey v. James (D.Conn., 1970), 311 F. Supp. 1275 (status as campus organization) ; Antonelli v. Hammond (D.Mass., 1970), 308 F.Supp. 1329 (censorship of articles in newspaper) ; Brooks v. Auburn University (M.D.Ala., 1969), 296 F.Supp. 188 (speaker on campus) ; Smith v. University of Tennessee (E.D.Tenn., 1969), 300 F.Supp. 777 (speaker on campus) ; Danskin v. San Diego Unified School Dist. (1946), 28 Cal.2d 536, 171 P.2d 885 (meeting in school auditorium).

which it is lawfully dedicated." (p. 47, 87 S.Ct. p. 247) *Adderley* dealt with jail grounds, and rejected an asserted right to trespass there in order to demonstrate against certain arrests. The case is not apposite. The refusal to permit a demonstration on jail premises was expressly found to have been nondiscriminatory.

Defendants point out that the campus newspaper is a facility of an educational institution and itself provides an academic exercise. They suggest that the advertising policy is a reasonable means of protecting the university from embarrassment and the staff from the difficulty of exercising judgment as to material which may be obscene, libelous, or subversive. In *Tinker*,[5] the Supreme Court, albeit in a somewhat different context, balanced the right of free expression against legitimate considerations of school administration. *Tinker* demonstrates how palpable a threat must be present to outweigh the right to expression. The Court said, in part, "But, in our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression. * * *

"In order for the State in the person of school officials to justify prohibition of a particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint. Certainly where there is no finding and no showing that engaging in the forbidden conduct would 'materially and substantially interfere with the requirements of appropriate discipline in the operation of the school,' the prohibition cannot be sustained." [6]

The problems which defendants foresee fall far short of fulfilling the *Tinker* standard.

*3. Joinder of the Board of Regents.* The argument on behalf of many of the defendants is confined to the merits. The defendant Board of Regents argues, in addition, (1) that the action is not maintainable against it because if so maintained, it would be an action against the state, and (2) that there is no foundation for declaratory judgment against it because it played no part in formulating the challenged policy.

▇ With respect to the first point, "It has been settled law since *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), that suits against state and county officials to enjoin them from invading constitutional rights are not forbidden by the Eleventh Amendment." Griffin v. County School Board (1964), 377 U.S. 218, 228, 84 S.Ct. 1226, 1232, 12 L.Ed.2d 256. The facts that the board is a "body corporate" [7] rather than a natural person and that this action is one for declaratory judgment rather than injunction seem to us not to differentiate the situation.[8] For the purpose of 42 U.S.C. § 1983, the board is a "person" where declaratory relief is sought against it.[9]

▇ With respect to the second point, we think that the board's undoubted power over the administration of the state universities, including policies like the one in issue,[10] makes it a proper party in an action for declaratory relief, brought against other defendants, subject to the board's control, who actually created and enforced the policy out of which the controversy arose.

The judgment is affirmed.

---

5. Tinker v. Des Moines, etc., School Dist. (1969), 393 U.S. 503, 89 S.Ct. 433, 21 L. Ed.2d 731.

6. P. 509, 89 S.Ct. p. 738. See also Scoville v. Board of Ed. of Joliet Tp. H.S. Dist. 204, etc., Ill. (7th Cir., 1970), 425 F.2d 10, 13.

7. Sec. 37.02, Wis.Stats.

8. See Barry Laboratories, Inc. v. Wis. State Bd. of Pharm. (1965), 26 Wis.2d 505, 510, 132 N.W.2d 833.

9. Schnell v. City of Chicago (7th Cir., 1969), 407 F.2d 1084, 1086; Adams v. City of Park Ridge (7th Cir., 1961), 293 F.2d 585. See also Penn v. Stumpf (N.D. Cal.1970), 308 F.Supp. 1238, 1241.

10. Sec. 37.11, Wis.Stats.