**Joseph E. HILL, Plaintiff-Appellant,**

v.

**TRUSTEES OF INDIANA UNIVERSITY et al., Defendants-Appellees.**

No. 75–1010.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 24, 1975.

Decided April 5, 1976.

250

Lawrence O. Sells, Indianapolis, Ind., for plaintiff-appellant.

John T. Hume, III, Stephen W. Terry, Jr., Indianapolis, Ind., for defendants-appellees.

Before STEVENS, Circuit Justice,[*] SWYGERT, Circuit Judge, and KUNZIG, Judge.[**]

SWYGERT, Circuit Judge.

This appeal arises from the district court's dismissal of a civil rights complaint seeking declaratory, injunctive, and compensatory relief in excess of $10,000 for the alleged deprivation of plaintiff's Fourteenth Amendment due process rights. Named as defendants in the complaint are the Trustees of Indiana University, in their official and individual capacities, and Dr. Maurice A. Garnier, a professor at Indiana University. Plaintiff based his claim of deprivation of a constitutional right on 42 U.S.C. § 1983 and the Fourteenth Amendment, alleging jurisdiction under 28 U.S.C. §§ 1343(3)(4) and 1331.

Plaintiff is a former graduate student of Indiana University who claims that his due process rights were violated when he received failing grades in two courses taught by defendant Garnier. In a letter dated May 14, 1970 Professor Garnier informed plaintiff that the basis for his failing grades was a determination that plaintiff had committed plagiarism. Professor Garnier's letter also notified plaintiff that pursuant to his instructions and in accordance with the *Faculty Handbook*, copies of the letter were being transmitted to the Dean of the Graduate School and a faculty member in the Department of Political Science.

Approximately two months after the May 14, 1970 plagiarism charge plaintiff was advised by the Associate Dean of the University's Graduate School that although an *ad hoc* review committee had been appointed to investigate the plagiarism charge, as was the Graduate School's usual procedure for handling contested claims of student misconduct, the Associate Dean had just discovered that the *Student Code of Conduct*, adopted by the Indiana University Board of Trustees and made effective September 9, 1969, prescribed a different procedure for issues of plagiarism and that a dean's review committee was no longer appropriate.[1] In light of this discovery, the Associate Dean informed plaintiff that any further consequence of Professor Garnier's plagiarism charge and/or plaintiff's failing grades would be held in abeyance until Professor Garnier returned to the university in the fall and provided plaintiff with an opportunity to exercise the procedures set forth in the *Student Code of Conduct*.

[*] Mr. Justice Stevens participated initially as Circuit Judge, and on and after December 19, 1975, as Circuit Justice.

[**] Judge Robert L. Kunzig of the United States Court of Claims is sitting by designation.

1. The *Student Code of Conduct* prescribes:

A faculty member who has evidence that a student is guilty of cheating or plagiarism shall initiate the process of determining the student's guilt or innocence. No penalty shall be imposed by the instructor until the student has been informed of the charge and the evidence on which it is based and has

been given an opportunity to present his defense to the instructor. If the faculty member finds the student guilty, he shall assess a penalty within the course and shall promptly report the case in writing to the Dean of Students. He shall include with his report the names of any other students who may be involved in the incident and his recommendations for further action. The Dean of Students, upon consultation with the faculty member if the latter so desires, may initiate disciplinary proceedings under the applicable regulations.

For reasons not apparent from the record, plaintiff did not avail himself of the university's administrative procedure in order to challenge the plagiarism charge.[2] Nor did plaintiff continue at Indiana University in the fall of 1970. Rather, plaintiff sought judicial relief in the federal district court claiming that receipt of these failing grades and his withdrawal from courses at Indiana University caused him to suffer a penalty without prior notice and an opportunity to be heard in violation of the Fourteenth Amendment and section 3.2(3) of the *Student Code of Conduct.*

In response to plaintiff's complaint, defendants filed a motion to dismiss accompanied by a supporting brief and affidavit. Defendants argued that the district court lacked jurisdiction over the Board of Trustees since the board was not a "person" within the meaning of 42 U.S.C. § 1983; that the complaint failed to allege any facts to support a claim upon which relief could be granted against the trustees as individuals; that Indiana's two-year statute of limitations for character injury barred any action against all defendants except the board who had waived the defense; and various other grounds supporting defendants' claim that plaintiff's complaint should be dismissed pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

Having afforded the parties an opportunity to brief the issues raised in defendants' motion to dismiss, the district court entered an order dismissing plaintiff's complaint on October 2, 1974. The complaint was not dismissed with prejudice, however, until fifteen days after issuance of the order. This appeal followed.

In his brief on appeal plaintiff argues that the district court erred not only in dismissing the complaint as to each of the defendants but also in considering an affidavit in support of defendants' motion to dismiss. Addressing this latter argument, we note that the trial judge freely admitted that he based parts of his ruling on facts contained in the affidavit submitted by defense attorney Alvin R. York. If defendants' motion was solely a motion to dismiss, plaintiff's contention would have merit. Courts are restricted to an analysis of the complaint when evaluating a motion to dismiss. *Grand Opera Co. v. Twentieth Century-Fox Film Corp.*, 235 F.2d 303 (7th Cir. 1956). However, the rules of civil procedure deal with the situation where a motion to dismiss for failure to state a claim for relief is accompanied by affidavits. A court may treat such a motion as one for summary judgment and consider all affidavits submitted. Fed.R.Civ.P. 12(b).

Moreover, plaintiff was well aware of the nature of defendants' motion. In his September 4, 1974 "brief in opposition" plaintiff stated: "defendants' motion to dismiss appears to be both a motion to dismiss and a motion for summary judgment although not entitled as such." The trial judge's use of the affidavit was proper under the rules of civil procedure. Plaintiff was aware of the thrust of defendants' motion and not prejudiced by any use of the affidavit. The lack of prejudice is especially clear in light of the district court's effort to provide plaintiff with an opportunity to file additional papers (counter-affidavits) prior to dismissing the action with prejudice. Therefore, we find no error in the district court's consideration of the contents of the affidavit in ruling on the motion to dismiss.

Turning to the remaining arguments raised by plaintiff in his brief and those raised for the first time at oral argument, we recognize that these arguments concern significant legal issues in the area of civil rights litigation. However, because we find that plaintiff's complaint fails to state a substantive claim against any one of the defendants upon which relief can be grant-

---

**2.** In his brief plaintiff attempts to explain his reasons for not taking advantage of the university's grievance procedure which was available to him. As an appellate court, however, we are restricted to the facts presented in the record before us. Because we find, *infra*, that the district court properly considered the facts contained in defendants' affidavit, we may not now consider those facts which plaintiff could have presented to the district court to dispute defendants' statements.

ed under either 42 U.S.C. § 1983 or the Fourteenth Amendment, we need not consider these questions.

Plaintiff claims that the receipt of failing grades as a penalty for plagiarism without any prior hearing or opportunity to present his defense constitutes a denial of due process. Assuming that the imposition of failing grades as a penalty for plagiarism gives rise to a "property" or "liberty" interest protected by the Fourteenth Amendment, we must decide whether plaintiff has alleged facts which, if proven, would demonstrate that he was deprived of this interest without due process of law.

■ The fact that Professor Garnier did not comply with section 3.2(3) of the *Student Code of Conduct* when he gave plaintiff failing grades does not, in itself, constitute a violation of the Fourteenth Amendment. Nor does the single fact that Indiana University adopted a grievance procedure which provides for a hearing before a plagiarism penalty may be imposed require a court to find that the procedure afforded plaintiff in the present case violated his right to due process. As the Supreme Court stated in *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 610, 94 S.Ct. 1895, 1901, 40 L.Ed.2d 406, 415 (1974), "[d]ue process of law guarantees 'no particular form of procedure; it protects substantial rights.' *NLRB v. Mackay Co.*, 304 U.S. 333, 351 [58 S.Ct. 904, 913, 82 L.Ed. 1381] (1938)." Not only has the plaintiff failed to allege any facts to show that the remedy afforded him inadequately protected his rights, but our own review of the record indicates that the procedure which the university made available to plaintiff for the purpose of defending the plagiarism charge and failing grades guaranteed him procedural due process.

The record shows that after receipt of his failing grades, withdrawal from his courses, and notification of Professor Garnier's plagiarism charge, plaintiff was informed that all further action against him would be held in abeyance pending review of his case in accordance with the procedures set forth in the *Student Code of Conduct.* Plaintiff was neither expelled nor suspended from the university as a result of his grades. Nor did he incur any other form of disciplinary action. In fact, plaintiff remained a student in good standing with the full opportunity of enrolling in Indiana University during the fall of 1970. Plaintiff was even recommended when he changed his major to the political science department of the university. The university stayed any further consequence of the plagiarism charge and continued to offer plaintiff an opportunity to defend the charge after plaintiff had discontinued his education at Indiana University and at least until the time of this lawsuit.

■ The requirement of a prior hearing depends, in part, on the nature of the penalty imposed. *Black Coalition v. Portland School District, No. 1*, 484 F.2d 1040, 1044 (9th Cir. 1973). The nature of the penalty imposed must be considered in light of its effect on an individual's constitutionally protected interests. Plaintiff has alleged no facts which would show that his receipt of failing grades as a penalty for plagiarism gave rise to the deprivation of a constitutionally protected interest when such interest was protected by the university's effort to stay any consequence of the plagiarism charge and grades pending plaintiff's exercise of the procedures set forth in the *Student Code of Conduct.* Under the circumstances here, it cannot be said that the receipt of failing grades caused any greater impairment to plaintiff's interests than would the plagiarism charge alone.[3]

Because we find that plaintiff failed to state a claim of denial of due process, the judgment of the district court dismissing this action is hereby AFFIRMED.

STEVENS, Circuit Justice (concurring).

While I agree with the discussion in Parts IA, IB, ID and II of Judge Kunzig's concur-

---

3. Though plaintiff claims that he withdrew from his courses as a result of the failing grades, there is no reason to doubt that plain-

tiff's successful challenge to the plagiarism charge would restore his credits at the university.

ring opinion, I agree with Judge Swygert that it is not necessary to address the question whether the corporate entity is a "person" within the meaning of § 1983.

KUNZIG, Judge (concurring in the result).

I concur in the result reached by the majority. With due respect, however, I feel obliged to state that I reach that result by different reasoning.

In this civil rights case plaintiff, a former Indiana University (I.U.) graduate student appeals the district court's memorandum opinion of October 17, 1974, dismissing with prejudice his suit, *inter alia*, for money damages against an I.U. professor, the I.U. trustees as a corporate entity, and the I.U. trustees individually. Plaintiff's complaint is based upon actions by I.U. officials after a plagiarism charge was lodged against him by Professor Maurice Garnier in May 1970. In his brief, Hill asserts four bases for district court error: (1) improper consideration of an affidavit; and erroneous dismissal of (2) the professor, (3) the corporate entity, and (4) the trustees as individuals. Plaintiff's brief contested the action of the lower court as it relates to section 1983 relief. 42 U.S.C. § 1983 (1971).[1]

In addition, at oral argument, plaintiff for the first time asserted two more grounds for error: improper denial of section 1983 *injunctive* relief against individual trustees, and faulty dismissal of the action insofar as it asks for section 1331 relief. 28 U.S.C. § 1331 (1971).

My study of the meager record before us leads me to have serious reservations about any decision based on an in-depth reliance on the factual posture at this stage of the proceedings. This is a motion to dismiss which can, of course, properly be interpreted as a motion for summary judgment.

However, candor requires that I express misgivings over the absence of any offer of affidavits of fact from the defendants on the crucial issues involved.[2]

Fortunately, there is no need in the instant case to follow such reasoning. Plaintiff is either unable under the law to pursue his action against any defendant he has seen fit to sue or has completely failed to use his intra-university remedies. The District Court judge correctly dismissed his suit against the professor, the trustees as a corporate entity and the trustees individually as analyzed hereinafter.

I would affirm the ruling below.

## I. Alleged Errors Argued in the Briefs:

### A. *The affidavit:*

Plaintiff's initial argument attacks the lower court's use of defendants' affidavit in support of their motion to dismiss. I concur in the majority's treatment of this issue. There is no error in the district court's consideration of the contents of the affidavit in ruling on the motion to dismiss.

### B. *The action against the professor:*

Plaintiff attempts to recover both compensatory and punitive damages against Professor Maurice Garnier for his alleged violation of plaintiff's fourteenth amendment due process rights. On May 14, 1970, Garnier sent plaintiff a letter that he had given plaintiff "Fs" in two courses due to plagiarism of a paper. Plaintiff received this notification on May 16, 1970. No other active conduct by Garnier is charged by plaintiff. The action was brought in the district court on June 13, 1972.

Plaintiff bases his suit against Garnier on 42 U.S.C. § 1983 (1971)[3] charging that the

---

1. In his brief, plaintiff's argument centered on improper dismissal of the *corporate entity* both as to money damages and equitable relief, but plaintiff only contested the dismissal of *individual trustees* as it related to money damages.

2. The only affidavit offered by defendants relates solely to the statute of limitations waiver argued by plaintiff. It fails to deal with defend-

ants' conduct toward plaintiff put in issue by the complaint in the instant case.

3. Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

professor violated his fourteenth amendment due process rights by imposing a "stigma-type" penalty without prior notice and an opportunity to be heard. The district court found that plaintiff's action was barred by the statute of limitations. I agree.

▇▇▇ Section 1983 contains no limitation provision. Courts, therefore, apply the time bar used by the forum state for similar torts. *Henig v. Odorioso*, 385 F.2d 491 (3rd Cir. 1967), *cert. denied*, 390 U.S. 1016, 88 S.Ct. 1269, 20 L.Ed.2d 166 (1968), *rehearing denied*, 391 U.S. 929, 88 S.Ct. 1814, 20 L.Ed.2d 671 (1968); *Johnson v. Railway Express Agency, Inc.*, 489 F.2d 525 (6th Cir. 1973), *cert. granted on other grounds*, 417 U.S. 929, 94 S.Ct. 2639, 41 L.Ed.2d 232 (1974); *Jones v. Jones*, 410 F.2d 365, 366 (7th Cir. 1969), *cert. denied*, 396 U.S. 1013, 90 S.Ct. 547, 24 L.Ed.2d 505 (1970). The district court found that the Indiana statute of limitations for character injury applied to this action. Both parties agree. The time for bringing plaintiff's suit against Garnier was therefore two years. *Burns Ind. Code Ann.* § 2–602 (Ind.Code § 34–1–2–2) (1971). The complaint shows that the last participation attributable to Garnier in any violation of Hill's constitutional rights occurred on May 16, 1970, well over two years before plaintiff filed this complaint (June 13, 1972). There is nothing further in the record to show subsequent wrongful conduct by Garnier. Clearly, a court cannot go *dehors* the record to imply any such further conduct.

However, plaintiff contends that the professor either waived the time limitation or that his alleged wrongful conduct constituted a tort that *continued* until remedied. Since the violation continued past June 13, 1970, Hill argues, it is not barred by the statute of limitations.

▇▇▇ Plaintiff suggests that defense attorney York made some sort of waiver of the statute of limitations time bar on behalf of Garnier. However, the York affidavit, discussed in the majority decision, specifically disavows any such waiver as to defendant Garnier.[4] Plaintiff's attorney never offered counter affidavits and never contested York's assertions in any way. Therefore, the district court correctly rejected plaintiff's waiver argument.

▇▇▇ Further, I am convinced that Garnier's wrongdoing, if any, did not constitute a continuing wrong. Absent ongoing circumstances such as false imprisonment, a section 1983 claim for relief arises at the time a tortfeasor interferes with a victim's rights. *Rinehart v. Locke*, 454 F.2d 313, 315 (7th Cir. 1971). Plaintiff's claims against Garnier thus accrued at the time of the last overt act attributable to the professor, May 14, 1970, or at the latest on May 16, 1970, the date plaintiff received Garnier's letter. Since this suit was filed on June 13, 1972, the district court properly found that plaintiff's section 1983 action against Garnier was barred by the two year statute of limitations.

C. *The action against the trustees as a corporate entity:*

Plaintiff also brought a section 1983 civil rights action against the I.U. trustees as a corporate entity (the corporate entity), again contending that the plagiarism penalty violated his constitutional rights. He seeks both money damages and equitable relief. Section 1983 applies only to wrongful conduct by "persons."[5] The correctness of the district court's dismissal in favor of the corporate entity hinges upon its determination that the corporate entity is not a "person" as that term is used in section 1983. In my opinion the trial judge correctly dismissed the complaint against the corporate entity.

---

liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. § 1983 (1971) (originally enacted April 20, 1871).

**4.** See note 2, *supra.*

**5.** "Every person who . . . subjects . . . any citizen . . . to the deprivation of any rights . . . shall be liable. . . ." *See* note 3, *supra.*

In *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed. 492 (1961), the Supreme Court found that municipal corporations and counties are not "persons" as that word is used in section 1983 and, therefore, not liable for money damages in section 1983 actions. Later, in *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), the Court further concluded that municipal corporations and counties are equally exempt from equitable section 1983 suits. In each case, the Court based its conclusion on the premise that Congress never intended to subject municipal corporations and counties to section 1983 liability.

To answer the question of section 1983 exposure of the corporate entity here involved, we must decide whether the same rationale that applies to exclude municipal corporations and counties from the ambit of section 1983 operates to preclude other bodies "politic and corporate" from section 1983 liability. I would conclude that it does. To determine whether a state university board of trustees is a "person" within the ambit of section 1983, we look at the relevant legislative history, case law, and the nature of the corporate entity itself.

As developed in *Monroe v. Pape, supra*, the intent of Congress to exclude "cities, counties and parishes" from the ambit of section 1983 was made clear by the fact that a proposal by Senator Sherman to make municipalities and counties liable for civil rights violations was unequivocally rejected by the House. *Monroe v. Pape*, 365

U.S. at 190–91, 81 S.Ct. at 485–86, 5 L.Ed.2d at 506–07. While this proposal did not purport to apply to all "bodies politic and corporate," several ramifications result. First, by using the term "person" in section 1983, Congress did not intend to extend liability to "bodies politic and corporate." The Sherman proposal would have been completely unnecessary if the term "person" had been intended to apply to "bodies politic and corporate."[6] Second, no court should presume that Congress intended to create a liability on the part of state "bodies politic and corporate" absent a clear expression of such intent. Therefore, I do not believe that Congress intended to create section 1983 liability for "bodies politic and corporate" such as state university boards of trustees.

Various courts that have considered the question of whether "person" in 1983 covers public school districts and universities have reached the same result. *See, e. g., Sires v. Cole*, 320 F.2d 877, 879 (9th Cir. 1963); *Kirstein v. Rector and Visitors of the University of Virginia*, 309 F.Supp. 184, 188 (E.D. Va.1970); *Schreiber v. Joint School Dist. No. 1*, 335 F.Supp. 745 (E.D.Wis.1972); *Powers v. Mancos School Dist. RE–6*, 369 F.Supp. 648 (D.Colo.1973); *Buhr v. Buffalo School Dist. No. 39*, 364 F.Supp. 1225 (D.N. D.1973); *Kerr v. Clarenceville School Dist.*, 344 F.Supp. 1244 (E.D.Mich.1972).[7]

Finally, given the nature of the I.U. corporate entity, I would not on practical grounds differentiate between municipali-

---

**6.** In *Monroe v. Pape*, the Supreme Court specifically rejected the proposition that the general definition of "person" contained in the Act of February 24, 1871, 16 Stat. 431, extended the meaning of the word "person" to "bodies politic and corporate," insofar as the term is used in section 1983. The Court also noted that the present general code provision defining "person" (1 U.S.C. § 1 (1971)) does not apply to "bodies politic and corporate." *Monroe v. Pape*, 365 U.S. at 190–91, 81 S.Ct. at 485–86, 5 L.Ed.2d at 506–07.

**7.** The Seventh Circuit prior to the decision in *City of Kenosha* recognized that bodies politic were "persons" for purposes of equitable section 1983 suits although not "persons" for section 1983 money damage liability. *Lee v. Board of Regents of State Colleges*, 441 F.2d 1257 (7th Cir. 1971). *Kenosha* eliminated this distinction. Later in *Aurora Educ. Ass'n E. v. Board of Educ.*, 490 F.2d 431 (7th Cir. 1973), *cert. denied*, 416 U.S. 985, 94 S.Ct. 2388, 40 L.Ed.2d 762 (1974), Senior District Judge Wysanski, sitting by designation from the District of Massachusetts, concluded that a local school district was not a municipal corporation, and therefore was subject to section 1983 liabilities. Judge Wysanski cited no legislative history or case law for this conclusion. My analysis that state university boards of trustees are not "persons" within the ambit of section 1983 need not necessarily conflict with the opinion in *Aurora* that local school boards are "persons." However, to the extent of any conflict, I would disagree with the Wysanski opinion.

ties and counties on one hand and "bodies politic and corporate" on the other for purposes of section 1983 liability. All are chartered by the state. All involve the situation where, should a court impose liability, the taxpayer rather than the real wrongdoer would bear the economic burden.

In short, I find no reason to construe "person" as used in section 1983 to apply to state-supported university boards of trustees, but not to municipalities and counties. Therefore, based upon the legislative history, case law, and the nature of Indiana University as a "body politic and corporate," I would hold that the corporate entity is not a person within section 1983 either for purposes of money damage or equitable liability. The district court, therefore, properly dismissed the action against the trustees as a corporate entity.

D.   *The action against the trustees individually.*[8]

■ Plaintiff's counsel conceded at oral argument that he had no case against the trustees individually, insofar as section 1983 money damage liability is concerned. I agree with plaintiff's concession and therefore, would also affirm the Trial Judge's conclusion on this phase of the case.[9]

## II.   Alleged Errors Raised for the First Time at Oral Argument:

Plaintiff's attorney now contends that the district court further erred by denying *equitable* relief against individual trustees and by dismissing without discussion plaintiff's section 1331 claim.[10] Here, a court finds itself at a distinct disadvantage since these questions were raised for the first time at oral argument. In addition, plaintiff did not trouble to brief these points. I would still concur with the *result* reached

by the district court, although I reason as follows:

Plaintiff comes before the court for equitable relief under section 1983 asking that we direct individual trustees to "correct" his academic records by substituting satisfactory grades for the unsatisfactory ones. Plaintiff also seeks section 1331 money damages from each defendant.

■ In order to inject the judiciary into what is essentially an intra-university dispute, plaintiff must first exhaust his available administrative remedies. *Stevenson v. Board of Education*, 426 F.2d 1154 (5th Cir. 1970), *cert. denied*, 400 U.S. 957, 91 S.Ct. 355, 27 L.Ed.2d 265 (1970); *Boyd v. Smith*, 353 F.Supp. 844 (N.D.Ind.1973). We should not consider such disputes where the institution itself might, given the chance, correct its own shortcomings. Here plaintiff never denied the plagiarism charges in his court complaint. As the majority correctly points out, in May 1970, he left I.U. and apparently never returned. Although plaintiff was informed that he had a right to appeal Dr. Garnier's penalties using the University's own internal procedures, the record is absolutely silent as to any attempt by plaintiff to do so. Since the court is restricted to the record, I would affirm the district court's denial of section 1983 equitable relief in favor of individual trustees and section 1331 money damage relief because plaintiff's total failure to exhaust the administrative remedies available to him forecloses his claim that he was denied *procedural due process.*

In a proper case, I could envision that a timely filed procedural due process action against state university officials who personally impose a stigma-type penalty without notice and an opportunity to be heard,

---

8.   Section 1983 money damage liability.

9.   Section 1983 money damage liability requires actual participation in violation of civil rights by wrongdoers before liability can attach. *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). Since plaintiff fails to assert participation by individual trustees in any violation of plaintiff's rights, plaintiff cannot prevail.

10.   28 U.S.C. § 1331 (1971) provides in part:
(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

after exhaustion of available administrative remedies, might be successful under sections 1331 or 1983. Compare *Kister v. Ohio Bd. of Regents*, 365 F.Supp. 27 (S.D.Ohio 1973), *aff'd*, 414 U.S. 1117, 94 S.Ct. 855, 38 L.Ed.2d 747 (1974); *McDonald v. National Collegiate Athletic Ass'n.*, 370 F.Supp. 625 (C.D.Cal.1974); *Marin v. University of Puerto Rico*, 377 F.Supp. 613 (D.Puerto Rico 1974). The action at bar is not such a case.

The district court properly considered defendants' affidavit and correctly dismissed plaintiff's multi-faceted civil rights complaint, as delineated above, on statute of limitations grounds, on plaintiff's failure to sue proper persons, on his failure to allege actual participation by defendants, and on plaintiff's failure to exhaust his administrative remedies. I would therefore hold that there was no error in the district court's dismissal of the action.

Accordingly, although I arrive at the same result by a somewhat different route, I concur in the judgment reached in the majority opinion.