Michael SINN, an individual, and Pam Pearn, an individual, Appellants,

v.

THE DAILY NEBRASKAN, a State Operated Newspaper; Donald Fricke; Kermit Hansen; Nancy Hoch; Robert Koefoot; James Moylan; John Payne; Margaret Robinson and Robert Simmons, in their official capacity as members of the Board of Regents of the University of Nebraska; Joe Thomsen; Mike Honerman; Jenelle Bishof; Melissa Wythers; John Hilgert; Dan Bernstein, Al Pagel; Don Gillen and Bill Dobler, in their capacity as members of the University of Nebraska-Lincoln Publications Committee; and Daniel Shattil, in his capacity as General Manager of The Daily Nebraskan, Appellees.

No. 86–1927.

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1987.

Decided Sept. 25, 1987.

Jerry Soucie, Lincoln, Neb., for appellants.

John C. Wiltse, Lincoln, Neb., for appellees.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MAGILL, Circuit Judge.

MAGILL, Circuit Judge.

In this case we review a ruling by the district court [1] that the *Daily Nebraskan,* a college student newspaper, was independent from the state for purposes of a suit brought under 42 U.S.C. § 1983. The district court concluded that the newspaper could legitimately refuse to publish certain "roommate wanted" advertisements in which the advertisers described their sexual orientation. We affirm.

## I. BACKGROUND.

The pertinent facts are clearly and thoroughly set out in the district court's opinion, written by Judge Urbom. *Sinn v. Daily Nebraskan,* 638 F.Supp. 143 (D.Neb. 1986). We need only reiterate briefly. The *Daily Nebraskan* is the campus newspaper of the University of Nebraska-Lincoln ("University"). On January 23, 1985, Pam Pearn tried to run the following two advertisements in the *Daily Nebraskan*: (1) "Lesbian woman needs roommate to share large 4 bedroom house with fireplace. $125 month—near south location—on bus line. 476-3996 evenings;" and (2) "Lesbian pet lover to share large 4 bedroom house with fireplace. $125 month—near south location—on bus line. 476-3996 evenings." On August 25, 1985, Michael Sinn tried to place an advertisement reading: "Gay male seeks roommate. Phone 423-7670. Try again!" All three advertisements were refused as contrary to the advertising policy of the *Daily Nebraskan.*[2] Pearn and Sinn sued the newspaper for declaratory and injunctive relief under 42 U.S.C. § 1983, claiming that its refusal to print their advertisements violated their first amendment right to free expression.

In his opinion Judge Urbom noted that the first amendment applies to the states and hence to the campus newspaper of a state-supported university. 638 F.Supp. at 146. Accordingly, he reasoned that the editors of a campus newspaper are entitled to the freedom of expression necessary to choose what the newspaper will publish and reject. Judge Urbom stated that the *Daily Nebraskan* would therefore be penalized were it compelled to publish what it otherwise chose to withhold.

Examining applicable caselaw, Judge Urbom noted that where student publications of state-supported universities are concerned, editorial freedom of expression has consistently triumphed over attempts at censorship. Judge Urbom concluded that the University, through a variety of guidelines, policies and procedures, successfully fostered and protected the newspaper's editorial independence and that therefore, in the exercise of editorial discretion, the *Daily Nebraskan* was distinguishable from the state. "There is no evidence that the University, contrary to the expressed protections contained within the *Guidelines For The Student Press,* has attempted, through the Publications Committee or otherwise, to regulate or direct the content of the *Daily Nebraskan.*" 638 F.Supp. at 148.

1. The Honorable Warren K. Urbom, Chief Judge, United States District Court for the District of Nebraska.

2. The newspaper's policy was interpreted by its Publications Committee as prohibiting all advertisements indicating the advertiser's sexual preference, not to punish or censor the expression of homosexual orientation, but to prevent discrimination in advertising.

Judge Urbom next turned to examine whether state action was present in the editorial decision-making of the *Daily Nebraskan,* for if state action was absent, then a suit brought under section 1983 must fail. In deciding this issue, he found instructive the following three Supreme Court cases: *Rendell-Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) and *Lugar v. Edmonson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Judge Urbom recognized that the three cases were not dispositive because they dealt with state action applied to the conduct of wholly private parties, while here the *Daily Nebraskan* is an instrumentality of the state. Judge Urbom reasoned, however, that the newspaper was not an agency of the state for all purposes. Judge Urbom held that because in its editorial decision-making the *Daily Nebraskan* functioned like a private newspaper, the exercise of editorial discretion did not constitute state action. 638 F.Supp. at 149.

Judge Urbom then examined the case assuming, arguendo, that state action existed. He stated in this regard that under first amendment analysis, neither newspapers in general nor the *Daily Nebraskan* could be characterized as a public forum. Thus, the appropriate test for determining the validity of the challenged governmental regulation was that the regulation must be (1) reasonable in light of the purpose which the forum serves and (2) not an attempt to suppress expression which the state finds offensive. 638 F.Supp. at 151. Judge Urbom found first that the *Daily Nebraskan* had reasonably determined that the plaintiffs' advertisements, in effect, discriminated against readers based on sexual orientation and second, that no evidence suggested that the editors had rejected the advertisements because they found them offensive.

Judge Urbom concluded: "The plaintiffs have no constitutional right that compels the *Daily Nebraskan* to open its columns to all who are willing to pay to publish their sexual orientation in a roommate advertisement." 638 F.Supp. at 152.

## II. DISCUSSION.

Sinn and Pearn ("appellants") argue first that state action is present here because the Publications Committee, which was responsible for the newspaper's policy, was created by the University's Board of Regents and appointed by the Chancellor. Second, they argue that a campus newspaper is a limited public forum and thus content-based discrimination must be narrowly drawn. Third, they argue that "roommate wanted" advertisements are protected commercial speech and thus entitled to constitutional protection. Because we find the first issue relating to the presence or absence of state action dispositive, we do not reach appellants' second and third arguments.

In support of their contention that state action is present here, appellants argue that school officials who infringe on constitutional rights meet the state action requirement. They point to *Lee v. Board of Regents of State Colleges,* 306 F.Supp. 1097 (W.D.Wis.1969), *aff'd,* 441 F.2d 1257 (7th Cir.1971), in which the district court held that the campus newspaper of Wisconsin's Whitewater State University could not refuse to print certain editorial advertisements expressing views as to a university employees' union, discrimination, and the Vietnam War.

Appellants assert that if the Board of Regents or the Chancellor of the University had directly adopted the policy at issue, state action would unquestionably be involved. They argue that because the newspaper's Publications Committee derives its existence, legal status, power, and authority from the Regents, state action is as present as if the Regents were directly responsible.

Appellants point out that the newspaper depends heavily on the state for financing and operating space. They argue that because the district court found, based on this dependence, that the *Daily Nebraskan* was an instrumentality created and thus sponsored by the state, this finding should have led to the conclusion that state action

was present. In this regard, they argue that *Blum* and *Rendell-Baker* are inapposite because they involved privately-owned entities, not creatures of the state.

We conclude, however, that Judge Urbom's holding that state action is absent survives appellants' arguments. Judge Urbom explicitly recognized that *Blum* and *Rendell-Baker* applied to wholly private parties but correctly reasoned that the principles they set forth could also be applied to this case. Those cases set out four factors as determinative of state action: (1) extensive regulation, (2) receipt of public funds, (3) type of function involved, and (4) presence of a symbiotic relationship. *Rendell-Baker*, 457 U.S. at 840–42, 102 S.Ct. at 2770–72; *Blum*, 457 U.S. at 1004–05, 102 S.Ct. at 2785–86. The *Rendell-Baker* Court pointed out that regulation and subsidization of an entity, without more, do not create state action, but that the proper test was, rather, whether the challenged action was "fairly attributable" to the state. *Rendell-Baker*, 457 U.S. at 838–41, 102 S.Ct. at 2769–71. *See also Lugar*, 457 U.S. at 937, 102 S.Ct. at 2753–54.

As a result of his careful study of the many safeguards preventing the state from interfering with the *Daily Nebraskan*, 638 F.Supp. at 147–48, Judge Urbom concluded, correctly we think, that the action of the newspaper was not "fairly attributable" to the state.

Appellants' position is not without support. In *Lee v. Board of Regents of State Colleges, supra,* the District Court for the Western District of Wisconsin and the Seventh Circuit both concluded that a campus newspaper should be open to anyone willing to pay to have their views published, rather than just commercial advertisers. The district court, however, appeared to rest its holding in part on the conclusion that the Board of Regents of State Universities was implicated in the newspaper's policy. The court stated: "It is undisputed that the president of Whitewater State University, defendant Carter, has supported the advertising policies here in question * * *. These facts, plus the fact that the Board of Regents may have the power to enforce the policies in question, make

the Board a proper party to an action for a declaration of rights." 306 F.Supp. at 1100. The Seventh Circuit agreed:

> [W]e think that the board's undoubted power over the administration of the state universities, including policies like the one in issue, makes it a proper party in an action for declaratory relief, brought against other defendants, subject to the board's control, who actually created and enforced the policy out of which the controversy arose.

*Lee*, 441 F.2d at 1260.

We decline to follow *Lee* for the following reasons. First, we do not believe that the applicable Supreme Court guidelines mandate a finding of state action in a situation such as the one before us, where state control, or bare potential for control, is so attenuated and even speculative. To hold otherwise would be to ignore Judge Urbom's careful exploration of the ways in which the *Daily Nebraskan* maintains its editorial freedom from the state.

Second, we find that the greater weight of circuit authority supports our position, rather than the viewpoint in *Lee*. In *Avins v. Rutgers, State University of New Jersey*, 385 F.2d 151 (3d Cir.1967), *cert. denied*, 390 U.S. 920, 88 S.Ct. 855, 19 L.Ed.2d 982 (1968), the court rejected the plaintiff's contention that the law review of a state-supported university was "a public instrumentality in the columns of which all must be allowed to present their ideas, the editors being without discretion to reject an article because in their judgment its nature or ideological approach is not suitable for publication." *Avins*, 385 F.2d at 152. The court concluded, rather, that:

> The right to freedom of speech does not open every avenue to one who desires to use a particular outlet for expression. * * * On the contrary, the acceptance or rejection of articles submitted for publication in a law school law review necessarily involves the exercise of editorial judgment and this is in no wise lessened by the fact that the law review is supported, at least in part by the State.

*Avins*, 385 F.2d at 153–54.

In *Associates & Aldrich Co. v. Times Mirror Co.*, 440 F.2d 133 (9th Cir.1971), a

similar case, the Ninth Circuit expressly followed the *Avins* rationale. In concluding that a court could not compel the publisher of a private daily newspaper to accept and print advertising in the exact form submitted, the *Times Mirror* court noted that "[e]ven if state action were present, as in an official publication of a state-supported university, there is still the freedom to exercise subjective editorial discretion in rejecting a proffered article." *Times Mirror*, 440 F.2d at 135.

Finally, in *Mississippi Gay Alliance v. Goudelock*, 536 F.2d 1073 (5th Cir.1976), *cert. denied*, 430 U.S. 982, 97 S.Ct. 1678, 52 L.Ed.2d 377 (1977), a group called the Mississippi Gay Alliance sought to compel the Mississippi State University campus newspaper to publish an advertisement for a gay counseling center. The district court had previously found that there was no indication that any University official or faculty member had anything to do with the rejection of the advertisement; but rather, that there was a complete lack of control over the student newspaper on the part of University officials. The district court thus concluded that rejection of the advertisement "does not constitute state action in any sense of the term," and the Fifth Circuit agreed:

> Since there is not the slightest whisper that the University authorities had anything to do with the rejection of this material offered by this off-campus cell of homosexuals, since such officials could not lawfully have done so, and since the record really suggests nothing but discretion exercised by an editor chosen by the student body, we think the First Amendment interdicts judicial interference with the editorial decision.

*Mississippi Gay Alliance*, 536 F.2d at 1075.

We think the same reasoning applies here, and accordingly affirm Judge Urbom on the grounds that state action was not present in the editorial decision at issue in this case. Our opinion, however, should not be read to imply that state action can never be present in the decisions of a student newspaper such as the *Daily Nebraskan;* rather, we reject appellants' argument, which appears to approach a per se

rule at the other extreme: that state action is always present in the editorial choices of such a newspaper. We believe that each case requires a separate inquiry into the underlying facts, and we merely hold here, as did Judge Urbom, that there are insufficient indicia of state control in this case to render the newspaper's editorial decisions "state action." We rest our decision and affirm the district court solely on the state action issue, and do not reach the other facets of the district court opinion; namely, the public forum issue, the commercial speech issue, and the equal protection issue.

HEANEY, Circuit Judge, concurring.

I concur in the result. Here, as in the Fifth Circuit case, *Mississippi Gay Alliance v. Goudelock*, 536 F.2d 1073 (5th Cir. 1976), *cert. denied*, 430 U.S. 982, 97 S.Ct. 1678, 52 L.Ed.2d 377 (1977), there is no evidence that university authorities had anything to do with the rejection of the ads. The record rather supports the view that the editors chosen by the student body exercised their discretion in rejecting them. Under these circumstances, as the Fifth Circuit noted, the first amendment interdicts judicial interference with the editorial decision. Had the editors decided to publish the ads, and had that publication been prohibited by university authorities, we would have another case and a reversal would be required.