**Joanne Mary SCHULER, Appellant,**

v.

**UNIVERSITY OF MINNESOTA; Departments of Psychology and Psychiatry Research; C. Peter Magrath, President; Professor Robinette, Academic Affairs; Professor Floyd Lofquist, Chairman; Professor Travis Thompson; Professor Gordon T. Heistad; Professor Thomas Bouchard; Professor Auke Tellegen; Professor Paul Meehl; Professor Roy Pickens; Professor Gloria Leon; Professor Leonard Heston; Professor Warren Roberts; Professor A. Sparber; and Professor E. Agan, School of Nursing, Appellees.**

No. 85–5160.

United States Court of Appeals, Eighth Circuit.

Submitted March 25, 1986.

Decided April 10, 1986.

Rehearing and Rehearing En Banc Denied June 17, 1986.

---

Joanne Mary Schuler, pro se.

Barbara L. Shiels, Minneapolis, Minn., for appellees.

Before ROSS, BOWMAN and WOLL-MAN, Circuit Judges.

PER CURIAM.

Joanne M. Schuler appeals *pro se* from an order of the district court[1] granting summary judgment to the defendants in a § 1983 civil rights suit filed by Schuler challenging her academic dismissal from the graduate program in the Department of Psychology at the University of Minnesota (the University). In her complaint Schuler alleged causes of action based upon procedural and substantive due process; discrimination on the basis of sex, age and emotional handicap; and pendent state law claims including malpractice, fraud and misrepresentation, negligent infliction of emotional distress, breach of contract, conversion and defamation.[2] We affirm.

1. The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

2. Also before this court on appeal is Schuler's renewed motion that selected portions of the

## I. Background

In order to earn a Ph.D. in psychology at the University, a graduate student must 1) complete the courses included in his or her approved doctoral program; 2) pass five written preliminary examinations, four in general areas and one in the student's area of specialization; 3) pass the preliminary oral examination, at which point the student becomes an official Ph.D. candidate; 4) write a thesis within five years of establishing candidacy; and 5) defend the thesis in a final oral examination.

According to the University's Graduate School Bulletin, "[t]he preliminary oral examination covers the major field and may also cover the minor field or supporting program and any work fundamental thereto, including possible plans for thesis research." The questions asked during preliminary oral examinations vary, and both the questions and the student's answers are unrecorded. In order to pass the examination, a student must receive at least four passing votes from among the five examining committee members. The Bulletin explicitly states:

> **Failure of the Examination**—Students failing the preliminary oral (a) may be allowed, on unanimous recommendation of the examining committee, to retake the examination or (b) may be excluded from candidacy for the degree. * * * No more than two preliminary oral examinations are allowed.

Schuler was originally admitted into the masters degree program in the Department of Psychology, but moved into the doctoral degree program within that department in 1973. In March 1974, the Graduate College formally approved Schuler's proposed Ph.D. program in the area of experimental psychology. By the end of 1974, Schuler had completed substantially all of the required coursework toward her degree, consistently receiving very high marks from

tape recordings of the Psychology Department Grievance Committee hearing be transcribed at government expense. Her previous motion was denied by this court on August 20, 1985, without prejudice to renew after briefs were filed.

her professors.[3] At that time, she passed three of the four general written preliminary examinations; however, she failed the fourth and did not attempt the fifth examination, covering her area of specialization. She eventually retook and passed the fourth general written examination in January 1978,[4] and successfully completed the fifth in October 1979.

Schuler's first preliminary oral examination was scheduled on December 6, 1979. In her complaint Schuler alleged that prior to the exam, Professor Gordon T. Heistad, her advisor, told her that she need not study, that the oral examination would cover past academic work, and that thesis plans would not be a topic of inquiry. Professor Heistad maintains that he told Schuler to study the areas in which she was weak, but suggested that her preparation for the written examinations would serve as the primary preparation for the oral. The examination lasted approximately forty-five minutes, during which time Schuler alleged she was questioned extensively about her thesis plans. Although the examining committee voted three to two against passing Schuler, the members unanimously agreed to allow her to retake the examination.

Schuler's second oral examination was administered on March 8, 1982, by a reformulated examining committee. Prior to the retake, Schuler allegedly was told by her advisor and by various committee members that the examination would focus upon her thesis research. The examination was between one and one-half to two hours in length and consisted of four questions which, Schuler argues, dealt primarily with topics covered in graduate coursework rather than with her own thesis research. Subsequent to the exam, two of the five committee members voted to fail Schuler, resulting in her second failure of the oral exam and her exclusion from candidacy for the doctoral degree.

In December of 1982, Schuler filed a grievance with the Psychology Department Grievance Committee in which she claimed that her advisors had misdirected and obstructed her; that her academic freedom had been violated; that she had been denied an academic "parent" from whom she could obtain proper guidance; and that her age, sex and past history had isolated her from the faculty. The committee met on two occasions for a total of seven hours to hear testimony from Schuler, Professors Heistad and Thompson, and two other members of the second oral examining committee. In its report, the committee concluded that Schuler's grievance was unsupported by the record. Schuler appealed the decision to the Graduate School Grievance Committee. That committee declined to formally consider Schuler's appeal, finding no procedural irregularities in the departmental hearing. Thereafter, Schuler filed suit in the district court against the University and fourteen University officials[5] seeking damages and declaratory and equitable relief. In an order dated March 26, 1985, the district court granted the defendants' motion for summary judgment.

## II. Discussion

### A. Fourteenth Amendment Claims[6]

#### 1. Procedural Due Process

Schuler first contends that both the manner in which the oral exam is structured

---

3. Schuler completed 160 hours of graduate work with a 3.96 grade point average out of a possible 4.0.

4. Between 1975 and 1978, Schuler made little progress toward her degree, taking an academic leave of absence due to personal problems.

5. The officials named in Schuler's complaint include the President of the University; the Associate Vice-President for Academic Affairs; the Chairman of the Psychology Department; Pro-

fessors Heistad and Thompson; Professors Heston, Roberts and Sparber, members of Schuler's first oral examining committee; Professors Pickens and Leon, members of Schuler's second oral examining committee; the Chair and two members of the Psychology Department Grievance Committee; and the Chair of the Graduate School Grievance Committee.

6. The parties do not dispute that state action was involved in Schuler's dismissal from the University, nor do they dispute that Schuler had

and the procedures governing review of student grievances operated to deprive her of her constitutional right to procedural due process. Schuler's objections to the structure of the oral examination concern her lack of notice of the evaluative criteria, if any, by which her performance on the oral exam was judged and the lack of a reviewable record of oral exam questions and answers. Schuler's objections to the University's grievance review procedures focus on four issues: 1) the lack of an unbiased decisionmaker (i.e., four of the five members of the initial grievance committee were Psychology Department faculty); 2) the presence of her former advisors at the departmental hearing; 3) the inadequacy of that hearing (i.e., she alleged she was denied adequate time to present her grievance, access to counsel, and an opportunity to present documentary and testimonial evidence); and 4) the University's failure to follow the appeal procedures it had prescribed for the adjudication of student grievances.

■ The full procedural safeguards of the fourteenth amendment are inapplicable where, as here, a student is dismissed from a state educational institution for failure to meet academic standards. *Horowitz,* 435 U.S. at 86 n. 3, 98 S.Ct. at 953 n. 3. Dismissal of a student for academic reasons comports with the requirements of procedural due process if the student had prior notice of faculty dissatisfaction with his or her performance and of the possibility of dismissal, and if the decision to dismiss the student was careful and deliberate. *Id.* at 85, 98 S.Ct. at 952.

■ That Schuler had the requisite notice of faculty dissatisfaction with her performance and of the possibility of dismissal was amply demonstrated by the district court. (Order at 13–15). Schuler was in-

formed by her advisor that she had failed the first oral exam. In the interim between the first and second exams, Dean Hein explained the consequences of a second failure to Schuler. Those consequences were also discussed in the Graduate School Bulletin. Finally, this first requirement of procedural due process set forth in *Horowitz* does not necessitate that prior to the examination Schuler be made aware of the criteria by which her performance will be judged or that those criteria be objective rather than subjective.

■ In concluding that the decision to dismiss a student must be careful and deliberate in order to comply with the due process clause, the Supreme Court's decision in *Horowitz* did not require that a hearing precede the decision. *Id.* at 86 n. 3, 98 S.Ct. at 953 n. 3. Clearly, the University went beyond what was constitutionally required in granting Schuler the opportunity to appear personally before the departmental grievance committee, however informal the hearing. Further, as the district court noted, if due process did not require the University to provide Schuler with a hearing prior to her academic dismissal, it would be anomalous to hold that due process requires the University to preserve a record of oral examinations for review.

In summary, Schuler's objections to the structure of the oral exam and her first three objections to the University's procedures governing review of student grievances were adequately considered by the district court and were appropriately resolved. However, Schuler's final argument, that the University deprived her of due process in failing to comply with its own procedural regulations in the adjudication of her grievance, was not addressed by the district court.

a property interest in continued enrollment. Schuler has also alleged that her dismissal deprived her of a liberty interest in pursuing a career in psychology. We need not decide, however, whether Schuler's dismissal deprived her of any interest constitutionally protected against deprivation without due process. Assuming the existence of a property or liberty interest, Schuler was awarded at least as much due process as the Fourteenth Amendment requires. *Board of Curators v. Horowitz,* 435 U.S. 78, 84–85, 98 S.Ct. 948, 952, 55 L.Ed.2d 124 (1978). *See also Regents of the University of Michigan v. Ewing,* —— U.S. ——, 106 S.Ct. 507, 512, 88 L.Ed.2d 523 (1985).

The University maintains that Schuler's factual and legal contentions in this regard are erroneous. It is the position of the University that the regulations governing the grievance and appeal process did not entitle Schuler to a formal hearing before the Graduate School Grievance Committee or to further review beyond that committee. Furthermore, the University contends that even if it had failed to comply with its own procedures, such failure would not amount to a constitutional violation because Schuler was accorded all the process she was due. *Horowitz*, 435 U.S. at 92 n. 8, 98 S.Ct. at 956 n. 8; *Hill v. Trustees of Indiana University*, 537 F.2d 248, 252 (7th Cir.1976).

■ Contrary to the University's contention, it is not clear that the regulations governing the appeal of student grievances did not entitle Schuler to further process.[7] However, the factual issue of the University's compliance or noncompliance with internally prescribed procedural rules and regulations need not be resolved if, as the University contends, a finding that the University failed to comply is not legally relevant to either Schuler's procedural or substantive due process claims. In *Hill*, the Seventh Circuit held that a professor's failure to comply with the University's Student Code of Conduct in failing a student as a penalty for plagiarism did not, in itself, constitute a violation of the fourteenth amendment. 537 F.2d at 252. Further, the fact that the University had adopted a grievance procedure which provided for a hearing before a plagiarism penalty could be imposed did not require the court to find that the procedure afforded Hill violated his right to due process. *Id.* In the context of the instant case, we agree that the University's noncompliance with its own grievance appeal procedures would not violate Schuler's right to procedural due process, because the hearing she received at the departmental level exceeded the process constitutionally required to protect her interest in continued enrollment at that institution.

## 2. Substantive Due Process

■ *Horowitz* left open the question of whether a university student subject to academic dismissal may maintain a cause of action for the violation of his or her right to substantive due process. *Horowitz*, 435 U.S. at 91, 98 S.Ct. at 955–56. Even assuming, however, that such a cause of action does exist, the student would still have to demonstrate arbitrary and capricious conduct on the part of university officials by showing that there was no rational basis for the university's decision or that dismissal was motivated by bad faith or ill will unrelated to academic performance. *Horowitz*, 435 U.S. at 91–92, 98 S.Ct at 955–56; *Hines v. Rinker*, 667 F.2d 699, 703 (8th Cir.1981) (citing *Greenhill v. Bailey*, 519 F.2d 5, 10 n. 12 (8th Cir.1975)); *Ikpeazu v. University of Nebraska*, 775 F.2d 250, 253 (8th Cir.1985).

The district court divided Schuler's substantive due process claim into three arguments: 1) that the oral exam is an invalid and unreliable measure and is, therefore, inherently unfair; 2) that her oral exams were unfair because she was asked different questions than those predicted by her advisors; and 3) that the decisions to fail her were irrational in light of her previous academic success. The court addressed each argument in detail and concluded that Schuler had failed to come forward with sufficient facts to indicate arbitrary and capricious conduct by the University. This finding does not appear erroneous on the basis of the record.

---

**7.** The University's Senate Statement on Academic Freedom and Responsibility arguably creates the right to at least two appeals of Schuler's grievance, one to the Psychology Department Grievance Committee and another to the Graduate School Grievance Committee with the possibility of a final appeal at the University level. The hearing Schuler received at the departmental level appears to have been conducted in accordance with both departmental rules and the Senate Statement. However, in her appeal to the Graduate School Grievance Committee and in the denial of further review beyond that committee, Schuler may not have received all the process she was due under the University's rules.

However, Schuler also contends that the University's failure to observe internally prescribed procedures in its dealings with her violated her right to substantive due process. The Supreme Court's recent decision in *Regents of the University of Michigan v. Ewing,* —— U.S. ——, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985), is dispositive of this argument. In *Ewing,* the Supreme Court held that judicial review of an institution's decision to dismiss a student for academic reasons is limited to an inquiry concerning whether the decision "is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Id.* at 513. In *Ewing's* case, the Court found that the decision was careful, deliberate, and based on an evaluation of the entirety of *Ewing's* academic career. *Id.* at 515. Although the two cases are factually dissimilar in some respects (i.e., *Ewing* involved a university's noncompliance with an established practice, rather than a published institutional rule or regulation), the student in *Ewing* arguably presented stronger evidence, in the form of statistical data, that the University's action was arbitrary and capricious than does Schuler.

Assuming that the University's failure to observe its own published procedural regulations is not the actionable legal wrong (i.e., that Schuler does not possess a property interest in the procedures themselves), Schuler does not present evidence that her grievance was processed differently than those of other students or any other evidence which would indicate arbitrariness on the part of the University. In the absence of such evidence and in light of evidence which indicates that the decision to dismiss Schuler was both careful and deliberate, we cannot conclude that the University acted arbitrarily or capriciously. *Ikpeazu,* 775 F.2d at 254; *Mauriello v.*

*University of Medicine and Dentistry of New Jersey,* 781 F.2d 46, 52 (3rd Cir.1986).

## B. Other Federal Claims

Schuler's complaint contained two other federal claims: age and sex discrimination under 42 U.S.C. § 1983 and handicap discrimination under the Rehabilitation Act of 1973, 29 U.S.C. § 794. Although Schuler alleged that her sex and her age (she is currently 57 years old) generated disparate treatment and isolated her from her professors, Schuler's complaint contains no factual allegations supportive of that claim. Additionally, Schuler denied on several occasions that she was alleging intentional discrimination, characterizing her allegations as mitigating factors or as evidence of benign discrimination. Schuler's handicap discrimination claim[8] is equally meritless. The disability or disabilities she allegedly suffered are insufficient to support a cause of action under the Rehabilitation Act, because Schuler was not an "otherwise qualified" individual within the meaning of the Act. *See, Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979).

## C. State Law Claims

Schuler's state law claims were properly dismissed for lack of jurisdiction. The eleventh amendment precludes federal court jurisdiction over such claims against states or state instrumentalities. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984). It is well established that the University is a state instrumentality for eleventh amendment purposes. *See Walstad v. University of Minnesota Hospitals,* 442 F.2d 634, 641–42 (8th Cir.1971).

---

**8.** Schuler's allegations concerning the nature of her "disability" are contradictory. Her complaint variously characterized her handicap as a test-taking phobia, a neurotic dependency upon her professors and an inability to communicate with her professors due to her right-brain dominance and their left-brain dominance. In her appeal brief, Schuler denies that she alleged a phobia as a handicap, maintaining that although she suffers from no disability, the individual defendants treated her as if she was so disabled. (Appellant's Brief at 31–32).

### III. Conclusion

Accordingly, Schuler's renewed motion that the tapes of her departmental grievance hearing be transcribed at government expense is denied and the order of the district court is affirmed.

A true copy.