**Richard R. NICHOLS, Plaintiff,**

v.

**John C. McDONALD, et al.,
Defendants.**

**Civ. No. 87–116–D–1.**

United States District Court,
S.D. Iowa,
Davenport Division.

May 8, 1990.

Patricia C. Kamath, Iowa City, Iowa,, for plaintiff.

Kathy Mace Skinner and Gordon Allen, Des Moines, Iowa, for defendants.

## MEMORANDUM OPINION AND ORDER

CELESTE F. BREMER, United States Magistrate.

Plaintiff, Richard R. Nichols, instituted the present civil rights action on July 10, 1987, against the defendants, members of the faculty and staff of the University of Iowa College of Medicine. Jurisdiction exists under 28 U.S.C. §§ 1331, 1343, 1343(b), 42 U.S.C. §§ 1983, and 1988. The parties filed a consent to proceed before the undersigned United States Magistrate pursuant to 28 U.S.C. § 636(c) on February 7, 1990

and the case was referred on February 9, 1990.

Trial in this matter was held in Davenport, Iowa on March 8 through 12, 1990. Plaintiff was represented by Patricia C. Kamath and defendants were represented by Kathy Mace Skinner and Gordon Allen. The parties submitted post-trial briefs by April 24, 1990. This matter is considered fully submitted.

## I. FINDINGS OF FACT

In February of 1982, plaintiff Richard R. Nichols was admitted to the University of Iowa College of Medicine under the Educational Opportunities Program (EOP).[1] All students admitted to the College of Medicine must fulfill the same academic criteria: achieve an undergraduate grade point average of 2.5, take the MCAT examination, and pass the undergraduate prerequisite courses.

During their first three semesters students at the College of Medicine are required to take and pass courses in the basic medical sciences. From the outset plaintiff experienced academic difficulties. He failed Biochemistry in the 1982 Fall Semester. He remedied the deficiency by taking a makeup examination before the beginning of Spring Semester 1983. In the Spring Semester of 1983, plaintiff failed Medical Physiology. On June 15, 1983, plaintiff was placed on academic probation. He was allowed to repeat the course that summer at Creighton University and received a passing grade. Plaintiff was removed from academic probation on August 25, 1983 and successfully passed all of the Fall 1983 courses.

The Introduction to Clinical Medicine (ICM) course fills all students' fourth semester. This major interdisciplinary course is taught by most of the faculty and is vital in providing a student with the tools for patient care.[2]

ICM is divided into subjective and objective components; the preceptorship and the didactic. In the preceptorship, each student "works up" six patients in University Hospitals, doing complete histories, physicals, and write-ups. Students are evaluated by their faculty preceptor and graded accordingly. The didactic portion consists of classroom lectures representing all clinical specialties within the field of medicine. Seven examinations are administered during the semester. To pass the didactic portion, students must achieve a grade of at least 65% on five of the seven exams and a cumulative average score of 70%. Essentially, there are three ways students can fail ICM: By failing the preceptorship, by scoring less than 65% on more than two didactic exams, or by failing to achieve a cumulative average of 70% on all didactic exams.

Plaintiff failed ICM in the Spring Semester of 1984. He received a passing grade for the preceptorship but failed 3 of the 7 didactic exams with a cumulative score of 66%. (Defendants' Exhibit P). On May 16, 1984, the Committee on Student Promotions, which is made up of faculty and staff who regularly review each medical student's progress, placed plaintiff on academic probation and required that he successfully repeat both the didactic and the preceptorship portions of ICM in the spring of 1985. Plaintiff appealed that decision by letters dated May 30, 1984, and June 6, 1984, requesting instead permission to take a make-up examination, which was within the committee's discretion. This request was denied on June 8, 1984. Plaintiff was not enrolled in the College of Medicine for Fall Semester 1984 and returned

1. The University of Iowa College of Medicine Educational Opportunities Program is designed to provide financial and academic assistance for educationally and economically disadvantaged applicants from certain groups underrepresented in medicine. The program's principal purpose is to give disadvantaged students access to medical education and enable them to pursue it as effectively as students outside the program. (Plaintiff's Exhibit 1).

While there are procedural requirements for EOP participants such as commencing studies the summer before other medical students, a major benefit to EOP students is the availability of grants to finance tuition, school and living expenses, which do not have to be repaid.

2. University of Iowa College of Medicine Handbook for New Students 1982. (Plaintiff's Exhibit 2).

home to Mississippi to work and study on his own.

On June 12, 1984, Dr. John Cowdery, plaintiff's faculty preceptor, sent a letter to defendant Aschenbrener, Associate Dean of the College of Medicine, regarding plaintiff's 1984 performance in ICM. It was Cowdery's opinion that plaintiff should take additional course work in physiology, biochemistry, and pathology before being allowed to repeat ICM a second time. Plaintiff did not know this letter was sent or Dr. Cowdery's specific recommendation about course work until after he filed suit in this matter.

Plaintiff once again failed ICM in the Spring Semester of 1985. Though he showed substantial improvement in passing the preceptorship, he nonetheless failed 3 of the 7 didactic exams with a cumulative score of 68.78%. (Defendants' Exhibit CC).

On May 22, 1985, the Committee on Student Promotions convened to review all medical students' performance and recommendations for promotions. Plaintiff was notified that the Promotions Committee would review his record, and if necessary contact him. He subsequently sent a letter to the committee setting forth his explanation of the difficulty he had with ICM and pointing out the improvement in his scores for the 1985 course. The committee considered plaintiff's entire academic record and his letter and unanimously voted to cancel his registration. The committee noted that though plaintiff had passed the preceptorship, achieved a near honors grade on his videotape examination, and had perfect attendance at all his small group meetings, he nonetheless failed three out of seven didactic exams and had a cumulative score of less than 70%. The Promotions Review Committee had the discretion to recommend promotion or remediation in specific courses, even if the course requirements were not met.

Plaintiff alleges that, due to his race, the Promotions Review Committee refused to recommend his promotion. Plaintiff points to instances where the committee made accommodations for white students which enabled them to be promoted without strict compliance with a course requirement. However, the committee has never recommended promotion for a student who failed ICM. The court finds that the actions of the Promotions Review Committee in cancelling plaintiff's registration were not racially motivated.

On June 13, 1985, the Medical Council met to consider the report from the Promotions Committee regarding all medical students, which included a review of plaintiff's status. The Medical Council is made up of medical college faculty and receives input from course directors, who leave prior to the council's vote on their recommendations about the students. This procedure was followed in plaintiff's case. After reviewing their discussion of plaintiff from the previous year, his entire academic record, and his letter to the Promotions Committee, the council unanimously voted to cancel plaintiff's registration. Thereafter, plaintiff was informed of and took advantage of his right to appeal and his right to appear personally before the council in order to make a statement and answer questions.

Plaintiff and his attorney appeared before the council, where plaintiff made a statement regarding his performance in ICM and argued that he should be allowed to make up the ICM course by taking a comprehensive examination. He also questioned why he was not informed of Dr. Cowdery's letter concerning his need for remedial help in the basic sciences, stating that if he had known of the letter he would have stayed in Iowa City and sought such help.

After this hearing on July 11, 1985, the Medical Council and Executive Committee sustained the cancellation of plaintiff's registration. Plaintiff was notified of this decision on July 13, 1985. The court finds that plaintiff's complaint was timely filed on July 10, 1987, within the two year statute of limitations and overrules defendants' Motion to Dismiss on that ground.

## II.  FOURTEENTH AMENDMENT ISSUES

### *Procedural Due Process*

■ Plaintiff contends that the manner in which decisions on academic promotions

are structured by the Promotions Review Committee and the Medical Council and the procedures governing review of those decisions operate to deprive him of his constitutional right to procedural due process. He claims that had he known of the specific suggestions in Dr. Cowdery's June 12, 1984, letter that he be required to develop a stronger foundation in the basic sciences before attempting ICM the second time, he would have done so and had a greater chance of passing. Plaintiff further claims that there are no published standards for deciding which students will be allowed to repeat or take a make-up exam in ICM and which students will be dismissed from the college, thus making the defendants' decision to dismiss him arbitrary and capricious.

"The full procedural safeguards of the fourteenth amendment are inapplicable where, as here, a student is dismissed from a state educational institution for failure to meet academic standards." *Schuler v. University of Minnesota*, 788 F.2d 510, 514 (8th Cir.1986) (citing *Board of Curators of the University of Missouri v. Horowitz*, 435 U.S. 78, 86 n. 3, 98 S.Ct. 948, 953 n. 3, 55 L.Ed.2d 124 (1978)). "Dismissal of a student for academic reasons comports with the requirements of procedural due process if the student had prior notice of faculty dissatisfaction with his or her performance and of the possibility of dismissal, and if the decision to dismiss the student was careful and deliberate." *Id.*

In 1984 plaintiff was informed by certified letters from defendant Aschenbrener that he was on academic probation and required to repeat both the didactic and the preceptorship components of ICM. After failing the second of seven didactic exams in the 1985 ICM course, Dr. Brown, the Course Director, notified plaintiff that one more failing grade would result in his failing the course for a second time. Plaintiff was aware of his academic standing at the College of Medicine. It is inherent in academic probation that dismissal is possible if better results are not achieved, and plaintiff knew that failing the entire ICM course twice would result in a Promotions Review Committee recommendation of dismissal,

which only the Medical Council would be able to change. Plaintiff had "prior notice of faculty dissatisfaction" and of the "possibility of dismissal." *Schuler*, 788 F.2d at 514.

■ Due process does not require that a hearing precede the decision to dismiss a student. *Schuler*, 788 F.2d at 514. In affirming the district court's decision in favor of the university, the court in *Schuler* held that the university had gone beyond that which was constitutionally required by granting Schuler the opportunity to appear personally before the departmental grievance committee.

The record clearly indicates that plaintiff received procedural due process far in excess of what is constitutionally mandated. The decision to dismiss plaintiff was based on his entire academic record at the College of Medicine. It cannot be said that this decision was not made "carefully and deliberately." *Schuler*, 788 F.2d at 514.

■ Furthermore, plaintiff's argument that defendants' decision to dismiss him was arbitrary and capricious must also fail. "To establish such arbitrary and capricious action, the plaintiff must show that there is no rational basis for the university's decision, or that the decision to dismiss was motivated by bad faith or ill will unrelated to academic performance." *Hines v. Rinker*, 667 F.2d 699, 703 (8th Cir.1981) (citations omitted). The court finds that there is simply insufficient evidence in the record to warrant a finding that any of the defendants' actions to cancel plaintiff's registration were motivated by racial bias, bad faith, or ill will.

### Substantive Due Process

■ Courts show great deference to the decisions "of officials of academic institutions who must daily decide who should be admitted, who should be dismissed, who should be graduated, and how the performance of its students should be measured." *North v. State*, 400 N.W.2d 566, 571 (Iowa 1987). The United States Supreme Court decision in *Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 106 S.Ct.

507, 88 L.Ed.2d 523 (1985), emphasizes the deference to which academic decisions are entitled. When the court refused to overturn an enrollment decision much like the one in the present case, it stated:

> When judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculties' professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.

> Considerations of profound importance counsel restrained judicial review of the substance of academic decisions.

*Id.* at 225, 106 S.Ct. at 513. Federal courts are not suited "to evaluate the substance of the multitude of academic decisions that are made daily by faculty members of public educational institutions—decisions that require 'an expert evaluation of cumulative information and [are] not readily adapted to the procedural tools of judicial or administrative decisionmaking.' " *Id.* at 226, 106 S.Ct. at 513 (quoting *Board of Curators of the University of Missouri v. Horowitz,* 435 U.S. 78, 89–90, 98 S.Ct. 948, 954–55, 55 L.Ed.2d 124 (1978)).

There is no indication in the record that the defendants violated plaintiff's substantive due process rights. The plaintiff offered no evidence from which the court could conclude that the defendants' actions were "such a substantial departure from accepted academic norms as to demonstrate [they] did not actually exercise professional judgment." *Id.* In fact, based on the testimony, the court finds that it is abundantly clear that the committee's decision did exercise professional judgment and was not motivated by racial bias or prejudice.

This court finds after reviewing the facts of this case and the applicable law, defendants did not violate plaintiff's procedural or substantive due process rights. Plaintiff's claims must fail.

WHEREFORE, the clerk is directed to enter judgment in favor of the defendants and against the plaintiff with costs of this action to be assessed against the plaintiff.

IT IS SO ORDERED.