Kenneth **ROACH**, Plaintiff,

v.

The **UNIVERSITY OF UTAH** et al., Defendants.

Civil No. 2:94–CV–163C.

United States District Court, D. Utah, Central Division.

June 20, 1997.

---

**3.** Defendants have not challenged the particular amounts due on the notes and guaranties.

Jeffrey D. Eisenberg & Paul M. Simmons, Wilcox, Dewsnup & King, Salt Lake City, UT, Steve Russell, Moab, UT, for Plaintiff.

Barbara H. Ochoa, Mark Ward, Donald H. Hansen, Utah Attorney General's Office, Salt Lake City, UT, for University of Utah.

Arthur Smith, Cynthia Berg, Robert Croyle, David Dodd, Alan Fogel, William Johnston, Raymond Kesner, Thomas Mallory, Sheri Mizumori, Frederick Rhodewalt, David Sabonmatsu, Carol Sanson, David Strayer, Gale Dick, Alexander Skibine, Wilfred Samuels, University of Utah Student Behavior Committee, Clinical Training Committee of the University of Utah Department of Psychology, for University of Utah Dept. of Psychology.

Barbara H. Ochoa, Mark Ward, Donald Hansen, Utah Attorney General's Office, Salt Lake City, UT, Stephen Golding, Lorna Benjamin, Timothy Smith, Donald Strassberg, Sally Ozonoff, Charles Shimp, James Alexander, Donna Gelfand, Ramona Adams, Ann Hart, for the University of Utah College of Social & Behavioral Science.

Kendall P. Hatch, Dunn & Dunn, Salt Lake City, UT, for Valley Mental Health.

## ORDER

CAMPBELL, District Judge.

This case is now before the court on defendants' motion for summary judgment and on plaintiff's motion for partial summary judgment. The court held hearings on these matters on February 18, 1997, and on May 13, 1997. Jeffrey D. Eisenberg appeared on behalf of plaintiff, and Donald Hansen and Barbara Ochoa appeared on behalf of defendants. The court has considered the arguments of counsel presented at the hearings, along with the memoranda filed by the parties, and finds as follows:

Plaintiff Kenneth Roach ("Roach") initiated this § 1983 suit asserting that he was unlawfully dismissed, on two separate occasions, from graduate programs at the University of Utah. The first dismissal was from the University of Utah's Clinical Psychology Training Program ("CPTP"), and the second was from the University's Masters Program in Educational Psychology ("MPEP"). Roach's complaint, which names the University and a number of its faculty members as defendants, lists five causes of action: (1) denial of procedural due process; (2) denial of substantive due process; (3) violation of the constitutional right to privacy;[1] (4) breach of contract; and (5) retaliatory discharge. Roach seeks injunctive relief, compensatory and punitive damages, and attorneys' fees. Defendants have moved for summary judgment on all claims, and plaintiff has cross-moved for summary judgment on claims 1, 2, and 4. For the reasons outlined below, the court finds that defendants' motion should be granted in part and denied in part, and that plaintiff's motion should be granted in part and denied in part.

## Background

In the fall of 1991, Kenneth Roach entered the CPTP as a graduate student working toward a Ph.D. Although Roach's progress in the CPTP was excellent, in approximately February 1993, it came to the attention of defendant Stephen Golding ("Golding"), Director of the CPTP, that Roach, while employed in 1992 as a telephone crisis-line counselor at Valley Mental Health ("VMH"), had had a sexual relationship with a female patient at VMH. Golding informed Roach by letter that pursuant to the procedures outlined in the Student Handbook for the CPTP, he would call a meeting of the Clinical Training Committee ("CTC") to discuss with Roach what had transpired at VMH and to decide what the appropriate response of the CTC should be. Roach was asked to provide Golding with a schedule of suitable times for the meeting and was advised that if Roach desired, he could designate a Clinical Student Representative to be present.

On February 17, 1993, Roach met with the CTC, which was comprised of several CPTP faculty members, and for nearly two hours answered questions regarding his relationship with the patient at VMH. During the CTC meeting, Roach acknowledged that the relationship had occurred. The CTC members, however, were dissatisfied with Roach's responses to the professional ethics issues presented by the VMH situation, and voted unanimously to recommend that Roach be dismissed from his enrollment in the CPTP. In a letter from Golding on February 22, 1993, Roach received notice that the CTC would make a recommendation to the Department of Psychology that he be dismissed from the CPTP. In the letter, Golding informed Roach that he could appeal the CTC's recommendation of dismissal to defendant Charles Shimp ("Shimp"), Chair of the Department of Psychology. Roach met with Shimp on March 2, 1993, and requested that Shimp reject the CTC's recommendation. Shimp, however, declined Roach's request and concluded that the CTC's recommendation was appropriate.

At a meeting of the full faculty of the Psychology Department on March 30, 1993, Golding brought the Roach matter to the attention of those faculty members in attendance. Golding presented a synopsis of the issues covered in Roach's interview with the CTC and informed the faculty of the CTC's recommendation. The faculty, by a majority

---

1. Plaintiff has withdrawn this claim.

vote of those present, voted to dismiss Roach from his enrollment in the CPTP. By letter dated March 30, 1993, Shimp informed Roach of the faculty's decision, and advised him of his right to appeal the matter to defendant Donna Gelfand ("Gelfand"), Dean of the College of Social and Behavioral Sciences.

Roach appealed to Gelfand, but in a letter dated May 11, 1993, Gelfand advised Roach that she found his dismissal from the CPTP appropriate. Gelfand informed Roach that his next level of appeal, according to the Graduate School Bulletin, was with Dean B. Gale Dick ("Dick"), Dean of the Graduate School. Roach notified Dick that he was appealing the CPTP dismissal, and as part of the appeal, Dick appointed an Advisory Committee to hear Roach's case. The Advisory Committee informed Roach that it would conduct a full evidentiary and fact-finding hearing on the merits of his case. Roach was advised of his right to be represented by an attorney, or by other representatives of his choosing at the hearing, which was scheduled to take place over several days in October 1993.[2] Roach was also advised of his right to testify on his own behalf, to call witnesses, and to hear witnesses against him. On the advice of counsel, Roach did not attend any of the Advisory Committee's hearings. However, the Advisory Committee considered the Roach matter and in its Report, Findings, and Conclusions, issued on November 2, 1993, confirmed Roach's dismissal from the CPTP.

In the Spring of 1994, Roach applied to and was accepted into the MPEP. Roach began course work in the Fall Quarter of 1994. On October 14, 1994, however, defendant Ann Hart ("Hart"), then Dean of the University's Graduate School, wrote Roach a letter telling him that his admission into the MPEP was rescinded effective immediately because of what Hart described as misleading and inaccurate information on Roach's admission forms. Hart advised Roach of his right to appeal the action, and Roach did so. Pursuant to this appeal, Roach was informed by letter on October 21, 1994, that he would be allowed to attend classes pending further review of Hart's action. That review led to a

decision by Arthur K. Smith, President of the University, to allow Roach to reapply to admission to the MPEP. By decision of the Department of Educational Psychology, Roach was ultimately allowed to be admitted on probation, subject to specific written conditions, most of which required faculty supervision of Roach's contact with clients in internship and practicum situations.

## Discussion

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant to establish the existence of an essential element to the claims on which they bear the burden of proof at trial. *Id.* To satisfy this burden, the non-movant cannot rest on the pleadings, but must by affidavit or other appropriate means, set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's case is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In applying this standard, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### Eleventh Amendment

The University of Utah, as an arm of the state, is generally shielded from suit in federal court by the Eleventh Amendment. *See Watson v. University of Utah Medical Center*, 75 F.3d 569, 574–75 (10th Cir.1996)

**2.** At this point Roach was represented by an attorney, Jaryl Rencher.

(finding that Eleventh Amendment immunity applies not only to the state, but also to governmental entities that operate as alter egos or instrumentalities of the state, including state universities). However, the University in this case has agreed to waive its Eleventh Amendment immunity. *See Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 98–100, 104 S.Ct. 900, 906–08, 79 L.Ed.2d 67 (1984); *Quern v. Jordan,* 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979). Accordingly, the University is subject to liability on plaintiff's pendant state law claim for breach of contract.

■ To the extent that plaintiff's § 1983 claims are asserted against the University, they are dismissed; the University is an arm of the state and is therefore not a "person" within the meaning of § 1983. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989); *Watson,* 75 F.3d at 574; *see also Howlett v. Rose,* 496 U.S. 356, 376, 110 S.Ct. 2430, 2443, 110 L.Ed.2d 332 (1990) (holding that even in situations in which a state has waived its Eleventh Amendment immunity, since the Court has construed the word "person" in § 1983 to exclude states, neither federal or state courts may entertain a § 1983 action against such a defendant). However, the individual defendants named in this action can be sued for damages under § 1983 in their individual capacities. *See Hafer v. Melo,* 502 U.S. 21, 30–31, 112 S.Ct. 358, 364, 116 L.Ed.2d 301 (1991). Also, to the extent plaintiff is seeking injunctive relief, he may sue the individual defendants in their official capacities. *See Will,* 491 U.S. at 71 n. 10, 109 S.Ct. at 2312 n. 10.

*Procedural Due Process*

■ Roach maintains that defendants violated his procedural due process rights in connection with his dismissals from the CPTP and the MPEP. The procedural protections of the Due Process Clause apply when the government has deprived an individual of an interest in liberty or property. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *see also Board of Curators of the University of Missouri v. Horowitz,* 435 U.S. 78, 82, 98 S.Ct. 948, 951, 55 L.Ed.2d 124 (1978) (holding that a student must establish either a "liberty" or "property" interest to receive the due process protections of the Fourteenth Amendment). Under rulings of the Tenth Circuit, graduate students at public institutions have a protected property interest in their continued enrollment. *Harris v. Blake,* 798 F.2d 419, 422 (10th Cir.1986); *Gaspar v. Bruton,* 513 F.2d 843, 850 (10th Cir.1975). Thus, Roach had a property interest in his continued enrollment in the CPTP and the MPEP.

■ "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). In connection with the suspension of a student from public school for disciplinary reasons, due process requires "that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss v. Lopez,* 419 U.S. 565, 581, 95 S.Ct. 729, 740, 42 L.Ed.2d 725 (1975) (holding that a student facing a 10–day disciplinary suspension from public school must be given some kind of notice and some kind of hearing). However, the full procedural safeguards of the Fourteenth Amendment are inapplicable where a student is dismissed from a state educational institution for failure to meet academic standards. *Horowitz,* 435 U.S. at 84, 98 S.Ct. at 952; *Harris,* 798 F.2d at 422. "Dismissal of a student for academic reasons comports with the requirements of procedural due process if the student had prior notice of faculty dissatisfaction with his or her performance and of the possibility of dismissal, and if the decision to dismiss the student was careful and deliberate." *Id.* (citing *Horowitz,* 435 U.S. at 85, 98 S.Ct. at 952).

*1. Dismissal from the CPTP*

■ The record clearly establishes that the procedures taken by the University in Roach's dismissal from the CPTP fully met the requirements of procedural due process. This is the case even assuming, as plaintiff's

counsel contends, that Roach's CPTP dismissal was for disciplinary reasons. Roach was given notice of the charges made against him, and was given a full opportunity to present his side of the story. Golding's initial letter to Roach on February 8, 1993, informed Roach that allegations of his misconduct while an employee at VMH had been brought to Golding's attention and that the matter would be brought before the CTC. Roach met with the CTC on February 17, 1993, for nearly two hours to answer questions regarding his conduct at VMH. Although counsel for Roach was not present at the meeting, and although Roach was not allowed to hear or cross-examine witnesses, such safeguards are not required at the pre-dismissal stage. Plaintiff cites *Dixon v. Alabama State Board of Education*, 294 F.2d 150 (5th Cir.1961), for the proposition that the requirements of due process entitled him to be represented by counsel and to have an opportunity to cross-examine witnesses at the CTC hearing. But *Dixon* stands for the position, adopted by this court, that due process in this situation requires notice and some opportunity to be heard. *Id.* at 157. Roach was given this, and more. Not only was Roach allowed to present his side of the story to the CTC, he was allowed to meet with Dr. Shimp to contest the CTC's recommendation. These procedures more than adequately provided Roach with pre-dismissal due process.

There is no evidence to suggest that the vote of the full faculty on March 30, 1993, whereby Roach was dismissed from the CPTP, was prejudicial or tainted, or that the recommendation of the CTC was misrepresented to the faculty in any way. Roach maintains that he was denied procedural due process because he was not present at the faculty meeting and thus was denied the opportunity to present his side of the story to the entire faculty. However, Roach was given a full opportunity to explain his situation to the CTC and then later to Dr. Shimp. The CTC and Shimp may not have been the representatives before which Roach wanted to plead his case, but they were responsible school officials and there is no evidence that they were prejudiced in any manner against Roach.

■ The post-dismissal procedures also fulfilled the requirements of due process. Roach was afforded several appeals following his CPTP dismissal, including a full evidentiary and fact-finding hearing before an Advisory Committee appointed by Dean Dick. Roach argues that the Advisory Committee was biased and that the post-dismissal hearing was not a de novo review. Roach argues that the Advisory Committee shifted the burden of proof to him to prove that the Psychology Department's actions were arbitrary and capricious. Roach's arguments are not supported by the record. "Any alleged prejudice on the part of the board must be evident from the record and cannot be based in speculation or inference." *Nash v. Auburn University*, 812 F.2d 655, 665 (11th Cir.1987) (finding that students were not denied due process in dismissal from veterinary school). There is no evidence that the Advisory Committee was per se biased simply because it consisted of faculty members. More importantly, the record demonstrates that the hearing before the Advisory Committee, which vas scheduled to occupy more than six days, was to be a evidentiary and fact-finding hearing on the merits of Roach's case. Nothing in the record suggests that the burden of proof at the hearing was shifted to plaintiff.

Because the evidence clearly establishes that Roach was provided ample pre-and post-dismissal procedures in the case of the CPTP dismissal, the court finds that the University's actions did not violate the requirements of procedural due process. Accordingly, the court grants defendants' motion for summary judgment on this claim.

### 2. *Dismissal from the MPEP*

■ While Roach was given numerous opportunities to present his side of the story in connection with his dismissal from the CPTP, his dismissal from the MPEP was handled far more summarily. Dean Hart on October 14, 1994, sent Roach a letter telling him "you are suspended from the University of Utah effective immediately." (Exhibit 22 to Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment). The letter gave Roach notice that he had a right

to appeal the action and that, unless he appealed the decision within two weeks, the suspension would become permanent. (*Id.*) Roach was given no prior notice of his dismissal and no opportunity to present his side of the story before being suspended.

Defendants argue that plaintiff did not suffer a deprivation of property because Hart's suspension of Roach was only a proposed action. But this argument is controverted by the record. Hart's letter states unequivocally that Roach's suspension is "effective immediately." The letter further describes the consequences of this suspension: "This action prohibits you from attending the University of Utah or maintaining graduate assistant employment." (*Id.*) Although on October 21, 1994, an agreement was reached between Roach's attorney and the attorney for the University that Roach could "attend classes provisionally pending the outcome of a hearing conducted expeditiously by a University committee as described in Dean Hart's letter to Mr. Roach of October 14, 1994." (Exhibit C to Defendants' Supplemental Memorandum Regarding Cross–Motions for Summary Judgment) it is undisputed that Roach was suspended from the University and, for at least seven days, was not allowed to attend classes. The Supreme Court's decision in *Goss* leaves no doubt that Roach's suspension triggered the requirements of the Due Process Clause. In *Goss,* the Court held that a ten-day suspension from school "may not be imposed in complete disregard of the Due Process Clause." 419 U.S. at 576, 95 S.Ct. at 737. The Court rejected the argument made by the appellant, various administrators of the Columbus, Ohio Public School System, that the Due Process Clause applies only if a student is subjected to a more severe loss than a brief suspension. The Court stated that "[n]either the property interest in educational benefits temporarily denied nor the liberty interest in reputation, which is also implicated, is so insubstantial that suspensions may constitutionally be imposed by any procedure the school chooses, no matter how arbitrary." *Id.*

*Goss* also leaves no question that under the standards applicable for a disciplinary dismissal, Roach was denied due process: he was given no prior notice of the charges against him and no opportunity to present his side of the story before his enrollment was "rescinded" and he was suspended from the MPEP. Even if Roach's suspension can be viewed as temporary, due process "requires at least these rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion from school." *Id.*

■ There is also no question that Roach's MPEP dismissal was a disciplinary dismissal and not an academic dismissal. Hart's letter makes clear that her action was prompted by what she viewed as Roach's "misleading" answers on his application to the MPEP through which, according to Hart, he "disguised the nature of" his dismissal from the CPTP. (Exhibit 22 to Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment). In *Horowitz,* the Supreme Court held that respondent was not denied due process in her dismissal from medical school. 435 U.S. at 85, 98 S.Ct. at 952. The Court noted that unlike a disciplinary dismissal, where a student must be allotted to present his side of the story to lessen the possibility of an erroneous decision, "the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking." 435 U.S. at 90, 98 S.Ct. at 955. In the present case, there is no evidence that any perceived problem with Roach's grades, inability to perform the work required by the MPEP, poor class attendance, or any failings whatsoever of an academic nature influenced Hart's decision to suspend Roach. As Hart stated unequivocally in her memorandum of October 20, 1994. "Mr. Roach's admission to the Graduate School in the Educational Psychology Department was *rescinded* because he provided misleading and inaccurate information on his admission forms." (Exhibit D to Defendants' Supplemental Memorandum) (emphasis in the original).

Because Roach's dismissal from the MPEP was a disciplinary dismissal, he was entitled to notice and an opportunity to be heard.

These procedural safeguards were denied him. Accordingly, the court finds that Roach's rights of procedural due process in connection with his suspension from the MPEP were violated.

### 3. Qualified Immunity

■ The court's determination that a violation of Roach's due process rights occurred does not end the inquiry. Defendants have also raised the defense of qualified immunity to Roach's claims for damages.

Qualified immunity shields government officials from the burdens of lawsuits stemming from the exercise of discretionary authority. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982): *Jantz v. Muci*, 976 F.2d 623, 627 (10th Cir. 1992). "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate cleary established statutory or constitutional rights of which a reasonable person would have known." *Watson*, 75 F.3d at 577 (quoting *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir.1992); *see also Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) ("'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the law"). To overcome the qualified immunity defense, "the plaintiff must do more than identify a clearly established legal test and then allege that the defendant has violated it. The plaintiff must demonstrate a substantial correspondence between the conduct in question and prior

law allegedly establishing that the defendant's actions were clearly prohibited." *Hannula v. City of Lakewood*, 907 F.2d 129, 131 (10th Cir.1990).

Here, Roach has met his burden in establishing that defendant Hart violated a clearly established constitutional right of a which a reasonable official in Hart's position would have known. The law at the time of Roach's MPEP dismissal was clearly established that in the case of a suspension for disciplinary reasons, due process required notice of the charges and an opportunity for the student to be heard. *See Goss*, 419 U.S. at 581, 95 S.Ct. at 740; *Horowitz*, 435 U.S. at 85, 98 S.Ct. at 952. Although the line between a disciplinary action and an academic action may not be clearly drawn, the facts in this case, as discussed above, leave no room for doubt: Roach's MPEP dismissal occurred for a reason totally unrelated to his academic progress or his academic standing. Thus, while student dismissals often involve both academic and disciplinary issues, Roach's suspension did not. Accordingly, a reasonable official in Dean Hart's position should have known that under the relevant circumstances, dismissing Roach from the MPEP without prior notice or an opportunity to respond was in violation of his rights under the Due Process Clause.

As the court finds that Roach was denied his rights of procedural due process in connection with the MPEP dismissal and that Dean Hart is not entitled to qualified immunity, plaintiff's motion for summary judgment on this claim is granted. The court's ruling, however, awards summary judgment for plaintiff only against Dean Hart.[3]

### Substantive Due Process

■ Roach maintains that defendants' actions during both the CPTP and the MPEP dismissals were so arbitrary that they violated his rights of substantive due process.

---

**3.** The parties' briefs make it clear that plaintiff's procedural due process claim for the MPEP dismissal is directed against Dean Hart. However, the liability of the other individual defendants is not squarely addressed. Because the court lacks a sufficient factual or legal basis to rule on the liability of defendants other than Dean Hart, who has been found liable, and the University of Utah, which as discussed above is not liable under

§ 1983, the court denies without prejudice the parties' cross-motions for summary judgment on the MPEP dismissal as the motions pertain to all individual defendants other than Dean Hart. If the parties wish the court to revisit the question of the liability of the individual defendants other than Dean Hart, they may file a separate motion and supporting memoranda addressing the issue.

"The Due Process Clause not only provides a procedural safeguard against deprivations of life, liberty, and property but also protects substantive aspects of those interests from unconstitutional restrictions by government." *Harris*, 798 F.2d at 423 (citing *Hewitt v. City of Truth or Consequences*, 758 F.2d 1375, 1378 (10th Cir.1985)). To establish a violation of substantive due process, a student must demonstrate arbitrary and capricious conduct on the part of university officials by showing that there was no rational basis for the university's decision or must show that the dismissal was motivated by bad faith or ill will unrelated to academic performance. *See Horowitz*, 435 U.S. at 91–92, 98 S.Ct at 955–56; *Harris*, 798 F.2d at 424; *Schuler v. University of Minnesota*, 788 F.2d 510, 515 (8th Cir.1986); *see also Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 225, 106 S.Ct. 507, 513, 88 L.Ed.2d 523 (1985) (student may maintain substantive due process claim if university's actions constituted a "substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment").

 Here, there is no evidence in the record which would indicate that Roach's CPTP dismissal involved unconstitutional motives, or that it involved arbitrary conduct on the part of the University. In the absence of such evidence, and in light of evidence which indicates that the decision to dismiss Roach from the CPTP was both careful and deliberate, the court cannot conclude that the University acted arbitrarily or capriciously. Accordingly, the court grants summary judgment in favor of defendants on plaintiff's claim that Roach's dismissal from the CPTP violated his rights of substantive due process.

The court denies without prejudice, however, the parties' cross-motions for summary judgment on plaintiff's substantive due process cause of action for the MPEP dismissal. The court finds that the factual record cur-rently before it is not sufficiently developed so as to justify an award of summary judgment for either party on this claim.

*Breach of Contract*

 Roach asserts a breach of contract claim in this action on the ground that the University of Utah Student Code constitutes a contract between Roach and the University, and that the University's failure to follow the Student Code when it dismissed Roach from the CPTP and the MPEP constituted a breach of contract.[4] However, Roach simply directs the court to the Student Code and then makes the legal conclusion that this document constitutes his contract with the University. Where the existence of a contract is the point in issue and the evidence is conflicting or admits of more than one inference, it is for the jury to determine whether the contract did in fact exist. *See, O'Hara v. Hall*, 628 P.2d 1289, 1291 (Utah 1981); *see also Slaughter v. Brigham Young University*, 514 F.2d 622, 625 (10th Cir.1975) (holding that the complaint "was based on a contract theory and that alone, but neither the conclusory allegations of the complaint showed, nor did the proof submitted by the plaintiff establish, a contract between plaintiff and the University in the disciplinary context").

 Here, Roach was provided with the University's Student Code, along with other student handbooks and bulletins, when he entered the CPTP and the MPTP. But whether the parties intended these documents to constitute a binding contract is unclear. The parties have presented little evidence to the court one way or the other. Accordingly, the court cannot decide as a matter of law at this stage that the mere existence of the University's Student Code created a binding contract between Roach and the University. Further, even should the trier of fact determine that the parties intended to be governed by some sort of contractual agreement found in the documents given Roach, because there are multi-

4. The only defendant potentially liable under Roach's breach of contract claim is the University of Utah. None of the individual defendants in this action could have had a contractual relationship with Roach. In other words, to the extent the University of Utah's handbook, codes, and bulletins constitute a contract, they create a contract between Roach and the University. Accordingly, all of the individual defendants are dismissed as to Roach's breach of contract cause of action.

ple documents, it is uncertain which documents and which provisions would govern any such agreement. The parties' cross-motions for summary judgment, therefore, are denied as they pertain to Roach's breach of contract claim.

### Retaliatory Discharge

 Roach has brought a fifth cause of action asserting that he was dismissed from the MPEP in retaliation for exercising his First Amendment rights.[5] Specifically, Roach argues that Dean Hart rescinded his enrollment in the MPEP because of this lawsuit. Defendants maintain that Roach's argument is meritless because Hart was not aware of the existence of Roach's lawsuit when she made the decision to rescind his MPEP enrollment. However, the record demonstrates that there is a factual dispute on this issue. For example, although Hart testified that she was unaware of the Roach lawsuit when she rescinded his MPEP enrollment in October 1994, plaintiff has presented evidence from which a reasonable trier of fact could find otherwise. The record shows that Roach first sued the University and its agents regarding his dismissal from the CPTP in Utah state court on January 6, 1994, and then in this court on February 14, 1994. As Dean Hart was named as a defendant in both actions, it is reasonable to conclude that she knew of the lawsuits. Moreover, in March 1994, Dean Hart was copied on correspondence between her counsel and plaintiff's counsel discussing whether her attorneys would accept service of process for her in both the state and federal actions.

Because a genuine issue of fact exists as to whether Hart knew of the lawsuit against the University for Roach's dismissal from the CPTP at the time she rescinded Roach's MPEP enrollment, summary judgment on this claim is inappropriate. Accordingly, defendants' motion for summary judgment on plaintiff's cause of action for retaliatory discharge is denied.

**5.** While it is somewhat unclear from Roach's amended complaint that the legal basis for this cause of action is the First Amendment, the court

### Conclusion

In light of the foregoing analysis, the court rules as follows:

(1) Count I: Insofar as plaintiff's claim for violation of procedural due process is based on his dismissal from the CPTP, defendants' motion for summary judgment is granted and plaintiff's motion for partial summary judgment is denied.

(2) Count I: Insofar as plaintiff's claim for violation of procedural due process is based on his dismissal from the MPEP, plaintiff's motion for partial summary judgment is granted and defendants' motion for summary judgment is denied.

(3) Count II: Insofar as plaintiff's claim for violation of substantive due process is based on his dismissal from the CPTP, defendants' motion for summary judgment is granted and plaintiff's motion for partial summary judgment is denied.

(4) Count II: Insofar as plaintiff's claim for violation of substantive due process is based on his dismissal from the MPEP, the parties' cross-motions for summary judgment are denied without prejudice;

(5) Count IV: The parties' cross-motions for summary judgment on the breach of contract claim are denied.

(6) Count V: Defendants' motion for summary judgment on plaintiff's retaliatory discharge claim is denied.

finds that under the liberal standards of notice pleading, plaintiff's pleading is sufficient.